1              UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3       Before The Honorable Alex G. Tse, Magistrate Judge

4

5  ROBERT GROGAN,                )  No. C 22-00490-AGT
                                 )
6            Plaintiff,          )
                                 )
7  v.                            )
                                 )
8  MCGRATH RENTCORP.,            )
                                 )
9            Defendant.          )
   _____)

10

11                              San Francisco, California
                                Friday, January 6, 2023
12

13   TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
           RECORDING 10:21 - 11:02 = 41 MINUTES
14

15 APPEARANCES:

16 For Plaintiff:
                                Paronich Law, P.C.
17                              350 Lincoln Street, Suite 2400
                                Hingham, Massachusetts 02043
18                          BY:  ANTHONY I. PARONICH, ESQ.

19 For Defendant:
                                Greenberg Traurig, LLP
20                              1840 Century Park East
                                Suite 1900
21                              Los Angeles, California 90067
                            BY:  IAN C. BALLON, ESQ.
22

23 Transcribed by:              Echo Reporting, Inc.
                                Contracted Court Reporter/
24                              Transcriber
                                echoreporting@yahoo.com
25

*Echo Reporting, Inc.*

2

1  <u>Friday, January 6, 2023</u>                                    <u>10:21 a.m.</u>

2                    P-R-O-C-E-E-D-I-N-G-S

3                           --oOo--

4          THE CLERK:  Calling case 22CV0490, Grogan versus

5  McGrath RentCorp.

6      Counsel in the courtroom, please (indiscernible) and

7  state your appearances.

8          MR. PARONICH:  Good morning, your Honor.  Anthony

9  Paronich for Plaintiff.

10         THE COURT:  Great, thank you.

11         MR. BALLON:  Good morning, your Honor.  Ian

12  Ballon, Greenberg Traurig, appearing for McGrath RentCorp.

13         THE COURT:  Okay.  All right.  And do we have

14  someone on the phone?

15         MR. FENWICK (Telephonic):  Scot Fenwick from

16  (indiscernible) should be on the phone.

17         THE COURT:  Okay.  Is that person able to hear --

18         MR. FENWICK:  Yes, good morning.

19         THE COURT:  Great.

20         MR. FENWICK:  (Indiscernible).

21         THE COURT:  Okay.  Is there anybody else on the

22  phone?

23      (No response.)

24         THE COURT:  Great.  All right.  Okay.  Good

25  morning, everyone.  We're here for the motion for

3

1  preliminary approval and -- is the recording on still?

2          THE CLERK:  Yes, your Honor.

3          THE COURT:  Great, okay.

4      And what I'd like to do is start with the Northern

5  District guidelines, because I think that's the most

6  important issue that I have with the proposed approval.  And

7  specifically, whether or not the class recovery

8  (indiscernible) adequately discusses both the post

9  settlement, vis a vis, the potential class recovery

10 Plaintiffs had fully prevailed on each of the claims.  And

11 I'll get into that once we set the -- that revision of the

12 guidelines, which I will direct you to, because I think it

13 clearly states, as well as the case law -- it states that,

14 in order for me to evaluate whether or not the settlement is

15 fair and reasonable, is I have to be able to evaluate the --

16 what the claims were again, if the (indiscernible) had

17 prevailed and whether or not the actual result measures up

18 to -- for reasonable (indiscernible).

19     And, what I would look at, and I'm focusing on page 10

20 of the memorandum, is that you (indiscernible) on saying

21 that the class members will recover a substantial portion of

22 their maximum (indiscernible) damages, but it appears to

23 only focus on the California Consumer Privacy Act.  And that

24 claim, as in the operating complaint, really only identifies

25 the California subclass.

4

1    I have here arguments made that (indiscernible)
2  evaluation on, that there are numerous other claims in the
3  complaint that I don't know what the value of those are, vis
4  a vis, the value of the ultimate settlement.
5    So I'll take discussion on that.
6         MR. PARONICH:  Your Honor, again, this is Anthony
7  Paronich for Plaintiff.
8    So, we had focused the discussion on the California
9  Consumer Privacy Act because those vantages were statutory.
10         THE COURT:  Right.
11         MR. PARONICH:  We fully anticipate that those will
12  be the most valuable claims in the settlement.  With respect
13  to the remaining claims, such as the negligence, the breach
14  of (indiscernible), good faith and (indiscernible).  Of
15  course, we sought injunctive relief, as well.  We thought
16  that those damages wouldn't approach what would be covered
17  under the California Consumer Privacy Act, and at a 20-
18  percent claims rate, which would be extremely high for this
19  kind of case, the statutory damage recovery would have been
20  $500.
21    However, your Honor's direction has been heard and if
22  you would like us to supplement with the focus on the other
23  claims, we could certainly do that.
24         THE COURT:  And (indiscernible) discussion as to
25  how you arrive at -- you know, presenting a record for me to

1 say that the California Privacy Act is the most, I guess,

2 important -- or how you prioritize it.  But let's go back to

3 a couple of points, as well.

4     So, the injunctive relief, which is the reports -- are

5 the reports -- and I gather is the leading remedy here, I

6 really didn't get a sense of what the value of that is.  I

7 don't have any sense of what the cost of that is to the

8 Defendants.  I don't have a real sense of like how much

9 value to give that, and most importantly, in the analysis

10 for how you parse out the money, I think I need to know that

11 or have some idea, because I don't have a way of gauging

12 whether or not the economic, and then the non-economic, are

13 adequate.  So, not having the top number, which is the

14 injunctive component, analyzed and giving it some numeric

15 value to it, I don't see how I can get there; what are your

16 comments on that?

17     MR. PARONICH:  Yes, your Honor.  When you say the

18 injunctive relief, the credit (indiscernible) is certainly

19 there.  We understand that and we had intended to submit

20 that final approval where a valuation of that would be, we

21 can work with the settlement administrator to assign a value

22 to that, as well, but to explain our perspective on that,

23 your Honor, because the class members have the ability to

24 elect the credit reporting, we are waiting to see how many

25 individuals elected that reporting in order to give a

6

1   specific proposed value.

2          THE COURT:  Okay.

3          MR. BALLON:  And may I also address some of these

4   -- some of these points?  Because we did -- on the defense

5   side, we filed a motion to dismiss.  And so, we have

6   documented for the record why we believe none of these

7   claims are valid.  And I think that that certainly goes to

8   the (indiscernible).

9       And, obviously, the Plaintiff filed a motion for

10  preliminary approval, and I'm not asking Plaintiff to agree,

11  but the claims (indiscernible).  But we had filed a motion

12  to dismiss, we're not aware of any class members having any

13  out-of-pocket costs.

14      The CCPA claim was added after our motion to dismiss,

15  so that wasn't briefed.  But a CCPA claim only provides

16  statutory damages if a plaintiff can prove that the -- that

17  the breach was caused as a result of a defendant's failure

18  to take reasonable measures.

19         THE COURT:  Uh-huh.

20         MR. BALLON:  In other words, that's a trial issue.

21  So, for the class to proceed, they would have to go all the

22  way to trial and then prove that my client failed to take

23  reasonable measures, not that the breach occurred.  It's not

24  a strict liability statute.  And, of course, we contend that

25  was not the case, at all.

1              THE COURT:  Uh-huh.

2              MR. BALLON:  But, obviously, we haven't briefed

3   the CCPA issue, but every other claim is briefed in our

4   motion to dismiss and that was at a point where the case

5   paused and we went into mediation before one of the, you

6   know, most highly regarded mediators in this district.

7              THE COURT:  Uh-huh.

8              MR. BALLON:  And so, I think that certainly is

9   relevant to the fairness and adequacy of compensation.

10             THE COURT:  I agree it's relevant, but I guess I'm

11  puzzled.  What do you -- what are you telling me?  You

12  briefed the fact that you discuss all of the other claims,

13  (indiscernible) CCPA, but how am I, on this record, supposed

14  to evaluate whether or not the settlement value is fair?

15             MR. BALLON:  Well, I mean, I was simply addressing

16  that -- that -- you had said you inquired about CCPA, then

17  you asked about the other claims.

18             THE COURT:  Right.

19             MR. BALLON:  And I wanted to make sure it was

20  clear, because I know it's not referenced in the motion --

21             THE COURT:  Right.

22             MR. BALLON:  -- that we -- the Defendant -- had

23  filed a motion to dismiss on the original complaint --

24             THE COURT:  Right.

25             MR. BALLON:  -- with all of the other claims, and

8

1  in great detail.  (Indiscernible) it's not because we moved

2  to dismiss, it's (indiscernible) we discuss in great detail

3  why these claims can't prevail.  And so, that certainly goes

4  to the fairness and adequacy of compensation.

5          THE COURT:  (Indiscernible) is like this is --

6  this is the claim, this is the one we're going to talk

7  about, the subclass, but it's not put into the context of

8  whether these other claims -- whether they were -- are they

9  worth anything.  And if you're pitching to me that this is

10 why your settlement is fair and reasonable, because these

11 other claims don't rise to the level of the California

12 claim, and the California claim we were able to resolve for

13 an amount that you think is going to be fair and reasonable

14 to the remainder, that's what I see that I don't have in the

15 motion.

16      What you moved to dismiss, you can incorporate that --

17 and you didn't oppose it, and there's no reason why you

18 would oppose what they're moving for, but there's no joinder

19 of everything, as the guidelines contemplate.

20      So, there are a couple of other things that I need to

21 circle back to, that with respect to the California

22 subclass.  So, is that a very -- I don't know --

23 numerically, are they significant?

24      MR. PARONICH:  I'm not -- I'm not sure, your Honor.

25 I'm looking at the class that we proposed as the -- it's all

9

1  (indiscernible), so I guess I'm a little confused when you

2  say "California subclass".

3          THE COURT:  It's (indiscernible) third amended

4  complaint.

5          MR. PARONICH:  Understood.

6          THE COURT:  Right.  (Indiscernible) the California

7  subclass, that's how you described in the complaint that's

8  operative here.  You're focusing on the claim that applies

9  only to the subclass, so how am I supposed to valuate the

10 fair and reasonableness of the settlement, as it pertains to

11 the entire class, if all you talk about here is the

12 California subclass?

13     Now, what Counsel is raising is that, all of these

14 claims were, in fact, litigated.  Although not -- the motion

15 to dismiss was not discussed in the California claim at that

16 time, but it's not -- all you're telling me to valuate that

17 is fair and reasonable is the California claim, as it

18 applies to the subclass; what about the non-California --

19 the remainder of the country?  The named Plaintiff here is

20 not part of California.  How am I supposed to address the

21 fairness to those folks?

22          MR. PARONICH:  Again, I understand, your Honor,

23 that that ties to your (indiscernible) about supplement

24 being --

25          THE COURT:  Right.

1          MR. PARONICH:  On the other claims.

2          THE COURT:  Right.  So then I can calibrate the

3  value of the settlement, vis a vis, the entirety of the

4  complaint.

5      Now, given that, I'm still -- I'm not -- I guess I'm

6  not tracking you, what you're -- what you want me to focus

7  on, other than there are all of these claims that were --

8  the original ones -- they were litigated and that was

9  addressed in the motion to dismiss; am I tracking what you

10  want, as part of your record?

11          MR. BALLON:  Yes, I was talking about --

12          THE COURT:  Okay.

13          MR. BALLON:  -- fairness and adequacy of all of

14  the other claims.

15          THE COURT:  Right.

16          MR. BALLON:  With respect to CCPA though, I was

17  making the argument, which is not mentioned in the brief,

18  but the separate argument, that because CCPA is not a strict

19  liability statute and requires a plaintiff to actually show

20  that the breach was caused as a result of the plaintiff's

21  failure to take reasonable measures to protect the security

22  of the information, that that causation issue is not

23  susceptible to resolution, short of trial.  And that

24  certainly goes to fairness and adequacy of the CCPA claim.

25          THE COURT:  Okay.  All right.  Now, there is a

11

1  reference here to this 20-percent, but that's based on your

2  experience, but I don't know how much value to give that.

3  Why should I take your representation that, as Counsel

4  describes it, that only 20-percent are going to file claims?

5          MR. PARONICH:  Well, actually, your Honor, in the

6  chart of comparable settlements, it gives some of the actual

7  claims rates of other data breach settlements, and it's far

8  lower than 20-percent.

9      So, our point, with respect to the 20-percent, was that

10  while we're informing class members what their potential

11  recovery was, and encouraging them to participate in the

12  settlement, we chose a conservative number.  What we viewed

13  was a very high claim rate, and not just in our experience,

14  based on other federal (indiscernible) in the Northern

15  District and elsewhere in this federal court state, the

16  final approval submissions.

17          THE COURT:  Okay.  So (indiscernible) go back and

18  compare them all.  I take your word that they're data breach

19  cases, but they do (indiscernible) again at a

20  (indiscernible) some classes are 74,000,000 people.  So, and

21  you're certain (indiscernible).  (Indiscernible) that the

22  20-percent is an accurate, or is a reasonable figure at this

23  point of (indiscernible)?

24          MR. BALLON:  (Indiscernible) think 20-percent is

25  incredibly high.

12

1          THE COURT:  Okay.

2          MR. PARONICH:  So our point, in terms of the

3 notice that we proposed to the Court, is because the

4 statutory -- the damage recovery here for claimants is

5 remarkably high.  So, unlike most data breach cases, I

6 actually think that the amount of cash compensation

7 available to class members will be the dominant component of

8 the settlement, as opposed to the credit (indiscernible).

9 But that's (indiscernible).

10         THE COURT:  Okay.

11         MR. PARONICH:  But in terms of encouraging

12 participation, but informing individuals of what they could,

13 potentially, expect as class members, we chose a number to

14 put in the notice that was conservative, based on an

15 incredibly claims rate.  In our chart of comparables, we

16 have a 1.8, a 2.91, a 7.81, a 5.27.  So those are actually

17 numbers that are more consistent with my experience in data

18 breach cases.  But I just wanted to have the Court

19 understand our thinking on what informed the notice.

20         THE COURT:  Okay.

21         MR. PARONICH:  And, of course, you have the

22 uncertainty of -- I appreciate Counsel's representation --

23 the Defendant is not aware of anyone that suffered out-of-

24 pocket harm, but when you -- in this settlement, we provide

25 for out-of-the-pocket reimbursement of up to $5,000.  That

13

1 creates a bit of an uncertainty, in terms of how many of

2 those claims are filed that could reduce -- because we have

3 a single common fund here, right.

4          THE COURT:  I have some observations regarding how

5 we go through that, and then we'll talk about that now.

6     So, pivoting -- let me make sure that I covered all

7 that I want to on this fairness -- I am going to want a re-

8 submission to kind of discuss this in the landscape of the

9 entire complaint, as opposed to just the one claim, and to

10 give more discussion to not just the California subclass.  I

11 understand that that's the strongest for you, in terms of

12 recovery and statutory penalties, but I need to be mindful

13 of other class members out there, especially those that are

14 not in California.

15     Okay.  So, in terms of reimbursement for the non-

16 economic and then -- or the economic and the non-economic.

17 The one thing that, if I just numerically did -- and I think

18 you're going to answer it -- I think I know your answers,

19 but I just wanted to make sure it's -- the record is clear.

20 (Indiscernible) the number crunching.  You know, if we have

21 the 8,500 class members out there and they submit some

22 economic claim, it dwarfs the amount of money that you have

23 here.  And similarly, once you've exhausted that group,

24 you're down to the non-economic ones.  Similarly, that can

25 be easily exhausted.

1    If you (indiscernible), which I think is what you're

2  telling me is that, you think the 20-percent, for example,

3  is extremely generous and you don't have any anticipation

4  now that the economic damages are going to be so -- are

5  going to be so high that they're going to deplete, is that

6  where you're going with that, as far --

7          UNIDENTIFIED SPEAKER:  (No audible response.)

8          THE COURT:  Okay.  My question though is, is there

9  going to be any notification that this fund is -- like,

10  (indiscernible) for the non-economic -- or the economic and

11  non-economic, but you may not get your money.

12  (Indiscernible), it's like send in your claim and you're

13  going to get $500, but it's really (indiscernible) that if I

14  were reading this, I would say, great, I'm going to send it

15  in.  The real (indiscernible) is, they may never see that.

16  I understand your position is that there are only so few

17  that were going to respond, but they don't know that.

18          MR. PARONICH:  Understood, your Honor.  And I

19  don't think our position is exactly that so few of you are

20  going to respond, it's that for the economic loss --

21          THE COURT:  Right.

22          MR. PARONICH:  -- (indiscernible) expect many.

23  But what we do say in the notice and if your Honor would

24  like different language, we would certainly be able to

25  revisit that, but we do say, based on estimated and

1  anticipated claims rates, this is what your recovery will

2  be.

3          THE COURT:  And -- but what kind of

4  (indiscernible) notification, if you think there should be,

5  and if you don't think there should be, that this is a very

6  (indiscernible) plan.  You might not get it, because it's so

7  -- (indiscernible) where you completely don't have anymore

8  money.

9          MR. PARONICH:  I understand -- if I may, your

10  Honor?

11          THE COURT:  Yes.

12          MR. PARONICH:  I understand your perspective, but

13  we -- our belief and recommendation to the Court was that,

14  language like that would potentially curtail participation.

15  When you're looking at some of the smallest data breaches in

16  federal court, and the largest ones, when you look at your

17  anticipated claim rate, we'd like to do our -- they're

18  frankly, unfortunately, pretty low.  So our goal is to do

19  everything we can to legitimately encourage participation.

20          THE COURT:  Okay.

21          MR. PARONICH:  And then our recommendation is

22  based on experience with our cases and others, reported in

23  the district and around the country, you're likely only

24  going to get a certain amount of claims anyways, what can

25  you do to best bolster those claims.  And that's what

16

1  (indiscernible).

2          THE COURT:  All right.  In talking about the claim

3  submission.  So, the -- in order to recover, they actually

4  have to submit a claim.  Is there -- and let me make sure

5  I'm understanding, because the way I understood something

6  (indiscernible) way I was reading or (indiscernible) is

7  wrong.  If you want to participate in the settlement, you

8  sign a claim and you get -- you are a part of the settlement

9  and you are entitled to one free year credit report; is that

10 -- am I correct?

11         MR. PARONICH:  You're correct, your Honor, except

12 there are three types of benefits, and --

13         THE COURT:  (Indiscernible) -- what happens if

14 they don't want to participate?

15         MR. PARONICH:  Well, they would file an

16 exclusion --

17         THE COURT:  Okay.

18         MR. PARONICH:  -- to (indiscernible) own rights.

19         THE COURT:  Okay.

20         MR. PARONICH:  File an objection to any portion of

21 the settlement.  Or, and as we advise in the notice, if you

22 do nothing, you'll get nothing, but you'll be releasing the

23 claims and your right to pursue (indiscernible).

24         THE COURT:  Okay.  So, the ones that are excluded

25 are not going to get a credit -- a free credit -- credit

17

1  report for the year?

2        MR. PARONICH:  And is -- I'm sorry, your Honor.

3  When you say those are "excluded", those who opt out or

4  people who simply don't do anything?

5        THE COURT:  Well, (indiscernible) says you were

6  excluded or you don't do -- that's what I'm trying to focus

7  on.

8        MR. PARONICH:  Understood.  You do have to -- and

9  sorry to answer part of the question -- you do have to elect

10 to the credit (indiscernible).

11       THE COURT:  Okay.  All right.  So let's take a

12 look at the -- I believe -- the (indiscernible) the notice.

13       MR. PARONICH:  Yes, your Honor.

14       THE COURT:  As I read it, they get it, they get

15 the report.  (Indiscernible) settlement.

16       MR. PARONICH:  Your Honor, then that -- then that

17 could be a typographical (indiscernible).

18       THE COURT:  Okay.

19       MR. PARONICH:  I'm looking at the long-form notice

20 on page five of the long-form notice, and (indiscernible) a

21 claim for credit monitoring and that explains that.  So, I

22 believe what you're looking at is -- would be a

23 typographical error.

24       THE COURT:  Okay.  Basically, if you're not going

25 to participate in part of the settlement, you do not get the

18

1  credit reporting?

2            MR. PARONICH:  Yes.

3            THE COURT:  Which makes sense.  Okay.  Why -- why

4  do they need to actually submit a claim form?  Is the --

5  what is the rationale for that?

6            MR. PARONICH:  Your Honor, that's a good question

7  and it's something that we consider in our of our

8  settlements.  And because of the size of this class, and the

9  nature of the class, (indiscernible) employees of the

10 Defendant, we feel really confident in the notice

11 (indiscernible) in getting direct notice from individuals,

12 and it's an 8,500 member class.

13    And so, our analysis was that the best recovery that

14 could be made available is, make the claim -- have the claim

15 form, but have it be as simple as possible, provide first

16 class notice, provide (indiscernible).

17           THE COURT:  (Indiscernible) for example, just say,

18 here's your activation code, if you want to participate in

19 the settlement, here's your code?

20           MR. PARONICH:  (Indiscernible) substantial

21 recovery that would be -- that would come from claims, would

22 justify doing the claims, which is the (indiscernible) as

23 keeping in a lot of these cases.  And here, just the

24 recovery is much larger than in a lot of cases on a per

25 capita basis.

1           THE COURT:  Okay.  So you're saying that you're

2    actually, in being mindful of the participation that you

3    encouraged, you think that the (indiscernible) claim form

4    actually (indiscernible) encouraging participation in the

5    settlement, or that it just (indiscernible), because if they

6    have a claim that leads to an economic (indiscernible)

7    process?

8           MR. PARONICH:  Yes.

9           THE COURT:  (Indiscernible) somebody that who

10   really just wants -- I just want the report, I don't need

11   anything else, I will go ahead and just waive getting notice

12   prior to something (indiscernible) on a credit report

13   (indiscernible)?

14          MR. PARONICH:  They will, your Honor.

15          THE COURT:  Okay.  And (indiscernible) that's a

16   better approach than to just do the application code?

17          MR. PARONICH:  We do, your Honor.

18          THE COURT:  And because?

19          MR. PARONICH:  And because our understanding, also

20   from the Defendant, is when the (indiscernible) --

21          THE COURT:  (Indiscernible).

22          MR. PARONICH:  My point actually didn't have to do

23   with that claim form, your Honor, it had to with the credit

24   monitoring, that this was also made available to the

25   employees prior to us litigating the case.

20

1         THE COURT:  Right.

2         MR. PARONICH:  And mediating the case.  So that

3    the activation code here as part of the claim form -- our

4    big focus on the claim form is to allow the substantial

5    recovery for the individuals who are willing to participate.

6         THE COURT:  Right.  But (indiscernible) they're

7    not going to get the credit report?

8         MR. PARONICH:  Unless they already chose to do one

9    through the Defendant at the time that it was reported

10   (indiscernible).

11        THE COURT:  Okay.  (Indiscernible) former

12   employee?

13        MR. PARONICH:  No, I mean when the first -- when

14   the breach was discovered, the Defendant made that

15   available, they could have already elected to do credit

16   monitoring (indiscernible).

17        THE COURT:  Right.  So then what happens to the

18   former employee (indiscernible)?

19        MR. PARONICH:  My understanding is that those

20   individuals were still notified of --

21        THE COURT:  Oh, they were?

22        MR. PARONICH:  Yes, your Honor.  I'm sorry if I

23   was unclear.

24        THE COURT:  Okay.  Let's move on to the release.

25   So the release, as I understand it, and it's -- because

1  essentially in this California case, dismissed -- and

2  therefore it's all being resolved in this federal action.

3  That makes perfect sense to me.  The (indiscernible) as

4  you're describing it, is that the class members are

5  releasing all claims that could have been listed in the

6  federal complaint -- the original federal complaint -- and

7  that (indiscernible) could have been asserted in the

8  California case; is that correct?

9          MR. PARONICH:  Yes, your Honor, related to the

10  data breach incident, which was --

11          THE COURT:  Right.  Okay.  (Indiscernible) those

12  California claims are?

13          MR. PARONICH:  That California claims that now

14  became part of the third amended complaint, your Honor.

15          THE COURT:  (Indiscernible) not very clear.

16  (Indiscernible) the case has been dismissed; is the

17  (indiscernible) to be incorporated into the complaint?

18          MR. PARONICH:  I guess I'm not sure what you mean

19  by the complaint being incorporated.

20          THE COURT:  (Indiscernible).

21          MR. PARONICH:  Yes, your Honor.

22          THE COURT:  And that has claims in it, and what

23  your -- has that (indiscernible) entirely incorporated into

24  (indiscernible)?

25          MR. PARONICH:  With the third amended complaint.

22

1          THE COURT:  Okay.  So is that made clear in the

2   operative complaint?

3          MR. PARONICH:  I'm not sure, your Honor.

4          THE COURT:  Okay.  What I don't know is, what was

5   transported from the California complaint that these folks

6   who are going to sign off on -- are going to be released,

7   are they getting a release for -- I mean (indiscernible)

8   what they're releasing?

9          MR. PARONICH:  They are not, your Honor, because

10  all of the claims in the third amended complaint --

11         THE COURT:  (Indiscernible) was made very clear

12  that the entirety of the California complaint has been

13  incorporated here.  I don't believe there's any reference to

14  the California complaint.  Maybe I -- I missed that.  But

15  the procedural tracking of what happened in the -- you

16  described it to me, but there's nothing in the actual

17  document.

18         MR. PARONICH:  And when you say the "actual

19  document", your Honor, are you looking for a reference to

20  the California case in the (indiscernible) amended

21  complaint?

22         THE COURT:  Right.

23         MR. PARONICH:  Understood.

24         THE COURT:  Okay.  Now let's move to -- okay.

25  Just so that -- we do have the claims administrator on the

23

1   phone.  There are a few provisions that describe a

2   (indiscernible) a disagreement, which -- that approve of the

3   economic -- that things were (indiscernible).  I just want

4   to make sure that everyone is comfortable, including the

5   claims administrator, that they're the ones who, I guess,

6   are going to be adjudicating that, and that (indiscernible)

7   up to a neutral to evaluate if there's continued dispute?

8           UNIDENTIFIED SPEAKER:  That's correct.

9           THE COURT:  And who is that neutral?

10          UNIDENTIFIED SPEAKER:  I think at that point -- at

11  this point that we reach the (indiscernible) class member

12  disputes the administrative (indiscernible) discussion

13  between the Plaintiff and the Defendant and we submit any of

14  those claims with a recommended  neutral, or special master,

15  for the Court's consideration.

16          THE COURT:  Okay.

17          UNIDENTIFIED SPEAKER:  So, to answer your

18  question, we haven't preselected a neutral (indiscernible).

19          THE COURT:  (Indiscernible).  In terms of the

20  proposed order -- actually, do you still have their proposed

21  order, I didn't bring it.

22          MR. PARONICH:  Your Honor, (indiscernible) copy?

23          THE COURT:  Yeah, that's great.  I'm just trying

24  to get the background on it.

25          MR. PARONICH:  It starts here.

24

1          THE COURT:  Okay, thanks.  All right.  At the very

2   end (indiscernible) it says, "Excluded from the settlement

3   class are employees of McGrath and employees of any

4   affiliate subsidiary of McGrath."

5          MR. PARONICH:  Which needs to be removed, your

6   Honor.

7          THE COURT:  Okay.  All right.  That was my only

8   point.

9      Okay.  All right.  So, what I'm going to -- I'm going

10  to deny the preliminary motion without prejudice so that you

11  can cure the items that we've discussed; how much time do

12  you want?

13         MR. PARONICH:  Fourteen days?

14         THE COURT:  All right.  So, you'll resubmit in 14

15  days.  I -- if I need to have a hearing because I have

16  further questions, I will notice that, but otherwise, the

17  order will come out -- yes, this is actually important

18  (indiscernible).

19     So the issue of attorneys' fees, which is obviously

20  important to everyone, so the -- since you are going to

21  resubmit, the (indiscernible) contemplates some discussion.

22  I realize the claims -- these aren't going to be approved

23  until the final approval, but it seems to me that you're

24  going to seek more than the -- what we typically do in the

25  district of 25-percent.  So, pay attention to the

1  guidelines, in terms of what -- what we seek in addition

2  that, because those will be evaluated.

3      And the -- (indiscernible) on mediation, correct?

4          UNIDENTIFIED SPEAKER:  Yes.

5          THE COURT:  And how long is mediation?

6          UNIDENTIFIED SPEAKER:  All -- we were there for

7  awhile, it (indiscernible) office.

8          THE COURT:  Okay.

9          UNIDENTIFIED SPEAKER:  And it went all day -- and

10 not to be vague, your Honor -- it went all day, and them

11 some.

12         THE COURT:  Okay.  So pay attention to that.  And,

13 actually, the guidelines contemplate -- starting to provide

14 information already, even at this preliminary stage.  And I

15 say that because, I can appreciate that you want to resolve

16 everything so that you can get the numbers, and -- or at

17 least figure out how to start the claim and if -- the more

18 you give me up front, the more I can spend doing that before

19 you get to the final approval.  Okay.  So that's just a

20 heads up for that.

21     Okay.  Fourteen days and where I'm going to go is

22 (indiscernible) anticipating that I will be able to issue an

23 order and if you have any kind of minor tweaks, it will be

24 in that order.  But if for some reason I still have

25 concerns, I'll call you back for a hearing, but for right

26

 1  now there won't be a hearing unless I need one.

 2          MR. PARONICH:  Understood, your Honor.

 3          THE COURT:  Okay.

 4          MR. PARONICH:  If (indiscernible) the Court's

 5  indulgence for just a moment?

 6          THE COURT:  Sure.

 7          MR. PARONICH:  To make sure that I have

 8  (indiscernible).  So we do intend to supplement the -- or

 9  we'll refile the motion with more of an explanation on the

10  valuation (indiscernible) for the other claims.  One thing

11  that I think I might have left unclear is, we gave our

12  explanation for the value of the credit monitoring, for the

13  individuals that were going to use it or not, I gave the

14  Court our perspective on that.  Would the Court -- because

15  anybody can do it -- I'm sure we can do it either way --

16  would the Court prefer that we give a valuation for the

17  credit monitoring up front of all potential individuals, or

18  should we wait until --

19          THE COURT:  I think (indiscernible) credit report

20  up front with (indiscernible) me to also evaluate the

21  remainder, which is also important.  If there's going to be

22  -- you know, I think it's relevant to me if the

23  (indiscernible) of being nothing -- relatively nothing --

24  which I don't think is the case, then that would affect how

25  I valuate the relief on the backhand.

1    So there are clearly items in the settlement that are
2  not -- we're not available to me and maybe they're available
3  now, that would be helpful so that I can evaluate what you
4  think the payout is going to be, and then I can use that, as
5  you discussed, for example, this is why the proposed
6  settlement is good, because this is how much they're going
7  to get.  They're going to get more than all of these other
8  cases and that may change, if your numbers come back very
9  different, which you have all of that information, I don't.
10 So if you have that information, that would be helpful for
11 me to have.
12         MR. PARONICH:  Does that Court anticipate or
13 expect the parties to then submit a fourth amended
14 complaint, which makes reference to the California state
15 case?
16         THE COURT:  I guess so, because I don't understand
17 how you can release something if (indiscernible) releasing
18 (indiscernible) in the California case.  (Indiscernible) I
19 can't tell you what the California case is.  You represented
20 to me now, which is accurate I'm sure, that the California
21 case in its entirety is now incorporated into the fourth --
22 or the third amended complaint.  But that wasn't made clear
23 in the complaint, as to how (indiscernible).
24         MR. PARONICH:  Understood, your Honor.  And I
25 don't mean to fight the hypothetical, but I'm just trying to

1 think out loud here that, could that potentially be cured

2 through a submission in the renewed preliminary approval

3 motion.  I guess it's a function of fact, but just a lack of

4 clarity on the Plaintiff's part, that all of the claims in

5 the California action (indiscernible) in the third amended

6 complaint, do we just need to make a better record on that

7 through the motion, as opposed to stating a fact in a new

8 amended complaint.

9          THE COURT:  It could be.  It could be.  Here is

10 what I'm thinking through though.  You know, the case

11 started off separate, which you had California carved out, a

12 different statute, different claims, different relief.  And

13 then in the amended complaint, also you have now this

14 defined as a subclass.  So -- and I could see somebody

15 reviewing all of this and figuring, for whatever reason, in

16 evaluating whether or not they should participate or not.

17 Is (indiscernible) subclass, and I think somebody might be

18 curious to find out what it is.

19     So I think more the more transparency you have, with

20 respect to what is going on in California, is -- is going to

21 be beneficial.  I (indiscernible) unnecessary paperwork.  I

22 do believe that creating a record is the most appropriate

23 (indiscernible).

24     I do see here that there may be a big difference

25 between the California individual and (indiscernible)

1 California individual, and I don't know how -- if they're

2 going to evaluate this, but that's why I'm trying to be very

3 clear for all of the others you may be looking at in

4 figuring out what you want to do is what happened to the

5 California case and how to incorporate that.

6          MR. PARONICH:  Understood, your Honor.  And if I

7 could continue?

8          THE COURT:  Yes.

9          MR. PARONICH:  We'll include a -- in the

10 preliminary approval motion, are you going to look for a

11 more detailed process, or would that -- you think the

12 settlement agreement itself (indiscernible) I'm sorry, the

13 neutral for any disputed document that come out of the

14 (indiscernible) claims?

15          THE COURT:  (Indiscernible) process so that when

16 it comes down -- you're thinking that that doesn't need to

17 be so much detail in the preliminary motion or in document,

18 or?

19          MR. PARONICH:  I'm asking where the Court's

20 expectation is --

21          THE COURT:  Right.

22          MR. PARONICH:  -- to see that explanation in my --

23 I think it would be beneficial to avoid re-executing and

24 drafting the settlement agreement.

25          THE COURT:  Okay.

30

1          MR. PARONICH:  But, if that's the case, the only

2   avenue for that, is more of an explanation in the background

3   of the settlement section on the (indiscernible) preliminary

4   approval motion, but I just think (indiscernible).

5          THE COURT:  Okay.  So that's a fair point, if you

6   didn't want to execute a new agreement.  You know, it really

7   is -- where do you want it to be binding.  So you don't --

8   if you think that it -- I mean, if it were me litigating the

9   case, you know, I would want some more boundaries on how

10  this gets elevated.  Although, I seem to be getting the

11  impression that you think it's going to be rarely invoked,

12  so I don't want to send you down turning this part to being

13  a huge part of the relief.

14     So, as long as there's some record of what the process

15  is, so that there's an understanding of it, I mean I leave

16  it up to you if you think that's -- you're going to be

17  baring the risk of that  -- on that.  So that was my -- I

18  raised it because it was -- there was an absence of that,

19  and quite frankly, I just wanted to make sure it wasn't the

20  Court who was going to decide, that I didn't want anyone's

21  expectation to be that any dispute over this would come back

22  to the Court to resolve.

23     So, that really, quite honestly, is my main concern is

24  that I just didn't want this Court to have to retain

25  jurisdiction over claims that don't have enough receipts and

31

1  things like that.

2         MR. PARONICH:  And we will make -- understood,

3  your Honor.  We will make that explicit.

4         THE COURT:  Okay.

5         MR. PARONICH:  In the new submission.

6         THE COURT:  Okay.

7         MR. PARONICH:  Then on the proposed order, we'll

8  -- the typographical error, with respect to (indiscernible)

9  and we'll add to the Plaintiffs on resubmitting their motion

10 for preliminary approval, we'll keep the attorneys' fees

11 guidelines (indiscernible).

12        THE COURT:  Great.  Great.

13        MR. PARONICH:  Thank you for your time.

14        THE COURT:  Anything further?

15        MR. PARONICH:  No, your Honor.  Thank you.

16     (Proceedings adjourned at 11:02 a.m.)

17

18

19

20

21

22

23

24

25

32

1                        CERTIFICATE OF TRANSCRIBER

2

3        I certify that the foregoing is a true and correct

4   transcript, to the best of my ability, of the above pages of

5   the official electronic sound recording provided to me by

6   the U.S. District Court, Northern District of California, of

7   the proceedings taken on the date and time previously stated

8   in the above matter.

9        I further certify that I am neither counsel for,

10  related to, nor employed by any of the parties to the action

11  in which this hearing was taken; and, further, that I am not

12  financially nor otherwise interested in the outcome of the

13  action.

14  

15

16              Echo Reporting, Inc., Transcriber

17                Monday, January 16, 2023

18

19

20

21

22

23

24

25