MEYER WILSON CO., LPA
Matthew R. Wilson (SBN 290473)
mwilson@meyerwilson.com
Michael J. Boyle, Jr. (SBN 258560)
mboyle@meyerwilson.com
305 W. Nationwide Blvd
Columbus, OH 43215
Telephone:     (614) 224-6000
Facsimile:     (614) 224-6066

TURKE & STRAUSS LLP
Samuel J. Strauss (*pro hac vice*)
sam@turkestrauss.com
Raina Borrelli (*pro hac vice*)
raina@turkestrauss.com
613 Williamson St., #201
Madison, WI 53703
P: (608) 237-1775

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ROBERT GROGAN, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>MCGRATH RENTCORP,<br><br>        Defendant. | Case No. 3:22-cv-00490<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' SECOND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**<br><br>Date:<br>Time:<br>Place:<br><br>Hon. Alex G. Tse |

**TABLE OF CONTENTS**

**Page**

## Table of Contents

STATEMENT OF ISSUES ...................................................................................... 1

SUMMARY OF SETTLEMENT ............................................................................ 2

I.     The Settlement Fund ...................................................................................... 2

II.    Claims Process ............................................................................................... 2

III.   Scope of Release ............................................................................................ 3

IV.    Notice of Settlement ...................................................................................... 3

V.     Settlement Administration ............................................................................. 3

VI.    Incentive Awards ........................................................................................... 4

VII.   Attorneys' Fees and Litigation Costs ............................................................ 4

VIII.  Comparable Settlements ................................................................................ 5

ARGUMENT .......................................................................................................... 5

I.     The Court should preliminarily approve the proposed settlement. ............... 5

       A.     The Settlement was reached with the parties fully informed
              about the case, and as the result of arm's length negotiations
              with an experienced mediator. ............................................................ 6

       B.     The settlement has no obvious deficiencies. ...................................... 8

       C.     All class members are treated equitably and fairly. ......................... 10

       D.     The settlement is within the range of reasonableness for final
              approval. ........................................................................................... 12

II.    The Court should certify the settlement class. ............................................ 15

       A.     The proposed class is sufficiently numerous. .................................. 16

       B.     The proposed class raises common issues, and the claims of the
              class representative are typical of the claims of members of the
              class. ................................................................................................. 16

       C.     Both the class representatives and counsel are adequate. ................ 18

       D.     Classwide issues predominate over individual questions. ............... 18

       E.     Classwide resolution is superior to individual adjudication. .......... 19

III.   The proposed notice plan is consistent with Rule 23 and due process. ...... 19

CONCLUSION ...................................................................................................... 21

SECOND MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
CASE NO. 3:22-CV-00490

| | **Page** |
|---|---|

**Cases**

*Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952 (9th Cir. 2013) ......................................................... 11

*Acosta v. Trans Union, LLC*, 243 F.R.D. 377 (C.D. Cal. 2007) ....................................................... 6

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ........................................................................ 15

*Churchill Vill., LLC  v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ................................................ 15

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) .................................................. 4

*Cruz v. McGrath Rentcorp.,* Case No. 22CV013281 (Alameda County Sup. Ct.) ......................... 4

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ................................................... 12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ..................................................... 12, 14

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir. 1964) ................................ 11

*Harris v. Vector Mktg. Corp., No C-08-5198, EMC*, 2012 U.S. Dist. LEXIS 13797 (N.D. Cal.

    Feb. 6, 2012) .................................................................................................................................. 9

*Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878 (N.D. Cal.

    Apr. 29, 2011) ......................................................................................................................... 5, 7

*In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018) ............................ 1, 8, 14

*In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ................................ 6

*In re Experian Data Breach Litig.*, No. CV-15-01592, 2019 U.S. Dist. LEXIS 81243 (C.D. Cal.

    May 10, 2019) ........................................................................................................................... 1, 8

*In re Linkedin User Privacy Litig.,* 309 F.R.D. 573 (N.D. Cal. 2015) ......................................... 11

*In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..................................... 5

*In re Wireless Facilities*, 253 F.R.D. 607 (S.D. Cal. 2008) ................................................... 10, 13

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.,* No. 16-MD-02752, 2020 U.S. Dist. LEXIS

129939 (N.D. Cal. July 20, 2020) .................................................................... 12, 14

*Lopez v. Bank of Am., N.A.,* No. 10-cv-01207-JST, 2015 U.S. Dist. LEXIS 114105 (N.D. Cal.

Aug. 27, 2015) ........................................................................................................... 9

*Rodriguez v. W. Publishing*, 563 F.3d 948 (9th Cir. 2009) ............................................. 7

*Rollins v. Dignity Health*, No. 13-cv-01450, 2021 U.S. Dist. LEXIS 258551 (N.D. Cal. Oct. 19,

2021) .................................................................................................................... 4, 5

*Saucillo v. Peck*, 25 F.4th 1118 (9th Cir. 2022) ........................................................ 6

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ............................................... 11, 13

*Sung v. Schurman Fine Papers*, No. 17-cv-02760, 2018 U.S. Dist. LEXIS 40379 (N.D. Cal. Mar.

11, 2018) ......................................................................................................... 12, 13, 14

*Toolajian v. Air Methods Corp.*, No. 18-cv-06722, 2020 U.S. Dist. LEXIS 250904 (N.D. Cal.

Apr. 24, 2020) ................................................................................................. passim

*Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157 (N.D. Cal. 2019 ...................... 10

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ................................................ 11

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) .................... 14

**Statutes**

Cal. Civ. Code § 1798.150(a)(1) ............................................................................ 10, 14

Cal. Civ. Code § 1798.150(a)(2) ................................................................................ 10

**Rules**

Fed. R. Civ. P. 23(a)(2) ............................................................................................ 11

Fed. R. Civ. P. 23(a)(4) ............................................................................................ 13

Fed. R. Civ. P. 23(c)(2)(B) ....................................................................................... 15

- iii -

Fᴇᴅ. R. Cɪᴠ. P. 23(e)(1)(B).................................................................................. 5, 15

**Treatises**

4 William Rubenstein, *Newberg and Rubenstein on Class Actions* § 13:13 (6th ed. 2022)............ 5

ACTIVE 681997397v1ACTIVE 684756148v2

## STATEMENT OF ISSUES

Plaintiffs Robert Grogan and Helena Cruz move the Court for preliminarily approval of a class action settlement with defendant, McGrath RentCorp. In January 2022, Plaintiff sued Defendant, alleging that it failed to protect his and the class's private information, leading to a data breach by cybercriminals. After receiving Plaintiff's Complaint and filing a motion to dismiss all claims, Defendant agreed to mediate the case on a class-wide basis, providing Plaintiff with important information necessary to evaluate the case. Armed with that information, Plaintiff secured a $1,400,000 settlement with Defendant ("Agreement" or "Settlement") during an arm's length mediation with a well-respected experienced mediator. This settlement is exceptionally good for class members, providing over $164 in recovery per class member, even if they have no evidence of any harm or damages resulting from the incident, which the Defendant asserts is true for the vast majority of the putative class. Indeed, the recovery per class member is virtually unprecedented – on a per-class-member basis – when compared to other data breach cases, including in cases of a similar number of class members, both in this district and elsewhere. *Compare, e.g., Pfeiffer v. RadNet, Inc.*, No. 220CV09553RGKSKX, 2021 WL 8893644, at *4 (C.D. Cal. Aug. 18, 2021) (granting preliminary approval to $2,600,000 common fund, 22,989 class members, $113.09/class member); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 318 (N.D. Cal. 2018) ($1.45 per class member).

If approved, the Agreement will deliver three benefits to the class. First, class members will be able to make a claim to receive credit monitoring for a year, guarding class members against identity theft. Second, the settlement will reimburse class members' out-of-pocket losses related to the data breach up to $5,000. Third, class members will be eligible to receive a pro rata share of the Settlement Fund to reimburse their "non-economic" losses following the data breach.

The questions presented by Plaintiff's motion for preliminary approval are:

1.      Whether a settlement class should be certified under FED. R. CIV. P. 23(b)(3);

2.      Whether the settlement should be preliminarily approved; and

3.      Whether the proposed notice plan is consistent with Rule 23 and due process.

As described below, the Agreement meets Rule 23's requirements for preliminary

approval. As a result, the Court should preliminarily approve this settlement, appoint Plaintiff as class representative, Plaintiff's counsel as class counsel, order the Parties to notify the class members about the settlement, issue a stay of litigation pending final approval, and schedule the final approval hearing.

## SUMMARY OF SETTLEMENT

### I.      The Settlement Fund

The Parties have agreed to settle all claims in this case for a common fund of $1,400,000. Ex. A at § 1.16. This figure will cover payments to Settlement Class Members, attorneys' fees and costs, incentive awards to the named plaintiffs, and settlement administration expenses.  No portion of this fund will revert to the Defendant; every penny of it will be paid out. *Id.* at §§ 4.5, 6.4, 9.1.

### II.      Settlement Class

The Class includes "[a]ll persons whose personal information, which may include health information, was potentially exposed to unauthorized access as a result of a[n] Incident affecting Defendant's computer network that occurred in 2021" who do not opt out of the settlement. *Id.* at § 1.30.[1] Defendant has represented that there are approximately 8,502 Class Members.

### II.      Claims Process

Class Members can make two types of claims.  First, they can make a claim for Documented Economic Loss, up to a maximum of $5,000.  *Id.* at § 4.5.2.[2]    Second, Settlement Class Members can make a claim for non-economic losses, and receive a pro-rata share of the remaining funds available in the Settlement Fund, after paying Documented Economic Loss claims, attorneys' fees and costs, incentive payments, and administrative expenses.  *Id.* at § 4.5.8.

---

[1] The class definition as set forth in the Second Amended Complaint is "[a]ll individuals residing in the United States whose PII was compromised in the Data Breach disclosed by MGRC on December 15, 2021." Dkt. No. 28, at ¶ 59.  While the wording of the definitions are different, the Parties intention is that the Settlement Class definition encompasses all of the individuals encompassed by the class pled in the Second Amended Complaint, but does not expand the scope of the class.

[2] To the extent there is any dispute over any claims for Documented Economic Loss which the parties cannot resolve themselves (and which they believe to be unlikely), the parties will agree to a Special Master, but this Court will not retain jurisdiction over that dispute.

A Settlement Class Member may make both types of claims.

Every Class Member has the ability to get one free year of credit monitoring. *Id.* at §
4.5.1. According to the Settlement Administrator, the value of one free year of credit monitoring
is $119.88 a class member. *See* Second Decl. of Scott M. Fenwick, § 4.

**III.     Scope of Release**

Every Class Member who does not opt-out of the settlement will be bound by the
judgment and will release all claims and causes of action that were or could have been raised in
the lawsuit, including but not limited to any causes of action under: CAL. CIV. CODE § 1798.150,
CAL. BUS. & PROF. CODE § 17200 *et seq.*, and all similar statutes in effect in any states in the
United States as defined herein; negligence; negligence per se; breach of contract; breach of
implied contract; breach of fiduciary duty; breach of confidence; invasion of privacy;
misrepresentation (whether fraudulent, negligent or innocent); unjust enrichment; bailment;
wantonness; failure to provide adequate notice pursuant to any breach notification statute or
common law duty. ECF No. 40-2at § 8.1.

**IV.     Notice of Settlement**

All Class Members will receive notice of the proposed settlement, their right to opt-out or
appear at the fairness hearing, and the consequences of taking no action. *Id.* at § 7.1. The Notice
will provide the Claim Form for Settlement Class Members to make claims under the Settlement.
*Id.* at § 7.2.

**V.     Settlement Administration**

Class Counsel elected to retain Kroll, a third-party settlement administrator, to administer
the settlement. This was done after a process by which four potential administrators submitted
bids, which were reviewed in consultation with counsel for McGrath. The Administrator will be
responsible for formatting, printing, and mailing the Notice Packet to each Class Member by U.S.
mail, or where a mailing address is not available, emailing the Notice Packet to the last known
personal email address, if known. During the notice period, the Administrator will be responsible
for processing returned Claim Forms. *Id.* at § 6.2.10. Following the Court's issuance of an Order
granting final approval of the settlement and dismissing the case, the Administrator will be

1  responsible for issuing Settlement Payments to participating Class Members. *Id.* at § 6.2.12.

2       Class counsel took bids from three different vendors.  In the request for bids, the request

3  was for notice consisting of mail, email, and website.  The estimate of administrative costs is

4  $94,000 to be paid out of the settlement fund.  This amount is reasonable in comparison to other

5  data breach settlements, accounting for the size of the class.  See ECF No. 40-3.[3]  The chosen

6  administrator will conform to the standards set forth in the Northern District of California's

7  standard for data security.  See ECF No. 40-4..

8  **VI.     Incentive Awards**

9       Prior to the fairness hearing, Class Counsel will request that the Court grant $5,000

10 incentive awards to Mr. Grogan and Ms. Cruz.[4] *Id.* at § 9.1. The settlement agreement is not

11 contingent on the Court's approval of the requested incentive awards. *Id.*

12 **VII.    Attorneys' Fees and Litigation Costs**

13      Class Counsel will apply for an award of up to $466,666.67 in attorney's fees, which is

14 one-third (33.33%) of the total settlement fund, plus their out-of-pocket expenses. *Id.* at § 9.1.

15 The settlement agreement is not contingent on the Court's approval of the fee award. Plaintiffs

16 will file a separate brief substantiating their request. Class Counsel spent 508 hours, or $302,610

17 in total lodestar, litigating, and subsequently resolving, this matter on behalf of Plaintiffs and the

18 Class. The modest multiplier of approximately 1.5, which will continue to decrease between now

19 and final approval, given the ongoing work Class Counsel will perform in furtherance of

20 preliminary and final approval and claims administration. It is well-within the range of what is

21 approved by courts in this district, especially in a case in which the result for class members is as

22 strong as it is here. *See Koenig v. Lime Crime, Inc.*, No. CV 16-503 PSG (JEMx), 2018 U.S. Dist.

23

24 _____

       [3] Counsel for the Plaintiff have not used this administrator in the last two years.
       [4] Ms. Helena Cruz was the named plaintiff in a companion case, *Cruz v. McGrath*
25 *Rentcorp.,* Case No. 22CV013281 (Alameda County Sup. Ct.).  Ms. Cruz's case was filed in
   California State Court in response to Defendant's motion seeking dismissal of this federal court
26 action on standing grounds.  By filing the case with Ms. Cruz, Plaintiff and class counsel
   demonstrated that they would be able to pursue the claims of the class even if Defendant had
27 prevailed on its standing argument in this Court.  By functionally negating one of Defendant's
   key arguments, the *Cruz* action, and Ms. Cruz's willingness to serve as a class representative,
28 materially advanced the settlement of this matter.  Per stipulation between the Parties, Plaintiff
   has filed a Third Amended Complaint that adds Ms. Cruz as a class representative in this case,
   and have dismissed the *Cruz* matter.

LEXIS 245359, at *18-20 (C.D. Cal. Apr. 2, 2018) (38% of common fund awarded as attorneys' fees in data breach case); *Stuart v. Radioshack Corp.*, No. C-07-4499 EMC, 2010 WL 3155645, at *6 (N.D. Cal. Aug. 9, 2010) (noting that "the fee award represents one-third of the settlement amount," which is "well within the range of percentages which courts have upheld as reasonable in other class action lawsuits"); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming one-third of the common fund).

### VIII.   Comparable Settlements

The relief provided by this settlement is outstanding. The total value of this non-reversionary common fund ($1,400,000) is equal to ***$164.67 per class member***. It is difficult to conceive of a better result for class members than this settlement; Class Counsel have found none that is better for class members. Comparable settlements drive that point home. Courts in this circuit and elsewhere have consistently approved data breach settlements providing class members ***$3 or less per person***. A chart of comparable settlements is attached to this brief as Exhibit B.

### <u>ARGUMENT</u>

"The Ninth Circuit maintains a 'strong judicial policy that favors' the settlement of class actions." *Rollins v. Dignity Health*, No. 13-cv-01450, 2021 U.S. Dist. LEXIS 258551, at *5-6 (N.D. Cal. Oct. 19, 2021) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). "Rule 23 requires courts to employ a two-step process in evaluating a class action settlement. First, the parties must show 'that the court will likely be able to . . . approve the proposal under Rule 23(e)(2).'" *Rollins*, 2021 U.S. Dist. LEXIS 258551, at *6 (quoting FED. R. CIV. P. 23(e)(1)(B)). "Second, courts must hold a hearing pursuant to Rule 23(e)(2) to make a final determination of whether the settlement is 'fair, reasonable, and adequate.'" *Id*. Under Rule 23(e), as amended as of December 2018, the initial preliminary approval process calls for front-loaded scrutiny of a proposed settlement so that any issues are identified *before* notice goes out to the class.

### I.   The Court should preliminarily approve the proposed settlement.

"The Court's task at the preliminary approval stage is to determine whether the settlement falls 'within the range of possible approval.'" *Rollins,* 2021 U.S. Dist. LEXIS 258551, at *6. "The Court may grant preliminary approval of a settlement and direct notice to the class if 'the proposed settlement [1] appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval.'" *Toolajian v. Air Methods Corp.*, No. 18-cv-06722, 2020 U.S. Dist. LEXIS 250904, at *21 (N.D. Cal. Apr. 24, 2020) (Tse, M.J.) (quoting *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)); *see also* 4 William Rubenstein, *Newberg and Rubenstein on Class Actions* § 13:13 at 348 n.9 (6th ed. 2022) (citing cases where Ninth Circuit district courts applied that standard).

The proposed settlement meets all of the requirements under the Rule and supporting case law, and Plaintiffs respectfully request that the Court grant preliminary approval.

      **A.**     **The Settlement was reached with the parties fully informed about the case, and as the result of arm's length negotiations with an experienced mediator.**

"The first fairness factor concerns 'the means by which the parties arrived at settlement.'" *Toolajian*, 2020 U.S. Dist. LEXIS 250904, at *22 (quoting *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878, at *24 (N.D. Cal. Apr. 29, 2011)). This factor has two components. First, the Court should ensure that at the time of settlement "the parties were 'armed with sufficient information about the case' to broker a fair settlement." *Id*. at *22 (quoting *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007)). Second, the Court should assess whether there is any evidence of collusion between the Parties. The Ninth Circuit has identified "red flags" that may suggest that plaintiffs' counsel allowed pursuit of their own self-interest to infect settlement negotiations, including when counsel receive a disproportionate portion of the settlement, when the parties agree to a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, or when the parties agree that any fees not awarded will revert to the defendant rather than be added to the class fund. *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). The Court "must

1   apply a more searching legal standard where the parties negotiate a settlement before the class has

2   been certified." *Saucillo v. Peck*, 25 F.4th 1118, 1133 (9th Cir. 2022).  No such red flags are

3   present here, because nothing about this settlement is collusive.

4          As to the first element, while the case has settled at a relatively early phase of the case,

5   the Parties have full information in order to enter into a fair settlement.  There is no dispute as to

6   the details of the Incident—on or around 2021, unknown hackers accessed the computer systems

7   of Defendant and potentially compromised the names, addresses, dates of birth, Social Security

8   numbers or tax identification numbers, and health information regarding Defendant's employees.

9   Ex. 1, at 1.  Thus, the facts are not in serious dispute and were well understood by the Parties

10  going into mediation.  Defendant moved to dismiss Plaintiff's claims in their entirety for failure

11  to state a claim, providing Plaintiff clear notice of the legal hurdles that further litigation will

12  pose. Prior to mediation, Plaintiff requested, and Defendant provided, comprehensive information

13  as to how many of Defendant's employees were impacted by the Incident, and which types of

14  personal information was compromised, which are critical pieces of information in evaluating the

15  value of the case.  Joint Declaration of Counsel in Support of Motion for Class Certification

16  ("Joint Dec."), at ¶ 16.  Plaintiff also requested, and Defendant provided, information relating to

17  the relevant insurance coverage.  Joint Dec., at ¶ 17.  This allowed Plaintiff to understand the

18  costs and benefits for the class of settling at this stage.

19         In addition, at all times, including during settlement discussions, the Parties' interactions

20  were adversarial. The proposed Settlement is the result of spirited, arm's length negotiations. The

21  time and effort spent on settlement negotiations, including through private, in-person mediation

22  with Randall W. Wulff, militate in favor of preliminary approval of the proposed Settlement, as

23  they indicate there was no collusion.  Joint Dec., ¶¶ 19-20. *See Rodriguez v. W. Publishing*, 563

24  F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length,

25  non-collusive, negotiated resolution.").  In addition, while the Settlement does contemplate that

26  Plaintiff's counsel may seek an award of up to one-third of the Settlement Fund plus costs, the

27  Settlement is not contingent on the Court granting a fee at all. Ex. 1, at § 9.1. Moreover, because

28  Class Counsel will be paid from the same Settlement Fund as Settlement Class Members, they

were incentivized to negotiate the largest fund possible. The Court will, of course, decide the appropriate amount of the attorneys' fee award after reviewing Class Counsel's motion and hearing any objections from Class Members. Not a penny of the Settlement Fund will revert to Defendants. *Id*. at § 4.5.12.

In sum, this settlement was reached as a result of non-collusive negotiations between fully informed parties with a full understanding how litigation the material facts.  The settlement meets the first criteria for preliminary approval.

### B.     The settlement has no obvious deficiencies.

In evaluating whether a settlement has obvious deficiencies at the preliminary approval stage, the Court can consider whether the agreement "provides reasonable and adequate relief for the class" and "otherwise contains provisions protecting the class's interests." *Harris*, 2011 U.S. Dist. LEXIS 48878, at *26.

Here, the Settlement provides relief that is virtually unheard-of in this context.  It is also tailored to nature of the alleged injuries at issue in the case.  In Plaintiff's view, all members of the class have suffered harm as a result of the exposure of their personal information, which McGrath disputes, because a loss of personal information alone is not an injury in fact in many of the jurisdictions in which the putative class resides.  The Settlement reflects  the parties' views of the case, as each class member is entitled to submit a claim for non-economic losses using a simple claim form that requires no additional documentation, regardless of whether they have suffered any documented harm—which Defendant asserts will likely include the vast majority of the putative class.  In addition, individuals in the class who claim to have had their identities stolen as a result of the data breach, subjecting them to a variety of "hard costs" either stemming directly from the theft or from efforts to rectify the theft,  can submit documentation supporting those losses and receive full reimbursement for those costs, up to a maximum of $5,000 per person.  And everyone can receive credit monitoring paid for by Defendant in addition to the

credit monitoring McGrath previously provided, which will reduce the losses that class members who have their identity stolen will suffer, as well as provide peace of mind to everyone.

The claims made process allows for the majority of the settlement funds to go to class members who have suffered an actual loss, but also provides significant compensation for the majority of the putative class that Defendant asserts likely has not been impacted at all by the incident. A claims process is a fair approach in this case, as opposed to simply sending out checks to each of the class members. The reason is that although Plaintiffs believe that every class member has suffered harm, only some of them suffered actual identity theft that resulted in the class member incurring hard costs, so Plaintiffs wished to make a special provision for such persons, which could only occur through a claims process. Similarly, some class members already have credit monitoring, and therefore may not wish to add another credit monitoring service. Finally, some class members themselves may disagree with Plaintiffs that they have suffered harm. Distributing settlement proceeds only to those class members who make a claim will ensure that only those class members who believe they have been harmed will recover money. And because settlement funds will *not* be provided to class members who do *not* make a claim, those who *do* will receive more money than they otherwise would. The claims structure, in other words, puts more money in the pockets of those class members who were most affected by the breach.

Moreover, the total amount of relief provided to class members—$1,400,000—is extremely favorable on a per-person basis. On that basis, with approximately 8,500 class members, the settlement is worth slightly under $165 per class member, which compares exceedingly favorably with other data breach settlements. *See In re Anthem*, 327 F.R.D. at 318 (describing fund worth $1.45 per class member as "meaningful consideration"); *In re Experian*, 2019 U.S. Dist. LEXIS 81243, *25 (approving settlement that provided "a $1.47 payout per

person, which compares favorably to other approved data breach settlements"); *In re Premera Blue Cross*, 2019 U.S. Dist. LEXIS 127093, *65–67 (fund worth $3.02 per class member provides "significant value"); *Gaston*, 2021 U.S. Dist. LEXIS 147383, *18–20 & n.1 ($1.42 per class member is "substantial" relief "on par with that in other data breach settlements"). This is no less true when compared to settlement involving a similar number of total class members as in the case at bar: see, e.g., *Pfeiffer v. RadNet, Inc.*, No. 220CV09553RGKSKX, 2021 WL 8893644, at *4 (C.D. Cal. Aug. 18, 2021) (granting preliminary approval to $2,600,000 common fund, 22,989 class members, $113.09/class member); *In re Citrix Data Breach Litig.*, No. 19-61350-CIV, 2021 WL 2410651, at *4 (S.D. Fla. June 11, 2021) (granting final approval to $2,275,000 common fund, 24,316 class members, $93.55/class member); *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, No. CV JKB-16-3025, 2019 WL 3183651, at *7 (D. Md. July 15, 2019) (granting final approval to $3,250,000 common fund, 61,000 class members, $53.28/class member).

While the ultimate recovery for class members is dependent on the number of claims submitted (both economic and non-economic), if the claims rate for non-economic losses is 20% (a high estimate, in class counsel's experience), there are no economic loss claims, and the Court approves the full one-third amount of attorneys' fees and costs, each claimant would receive *in excess of $500 for non-economic losses*. If the claims rate is 10%, which would still be a healthy percentage in a case like this, then the relief per claimant will be more than $1,000. Not only is this meaningful, substantial relief for class members who make claims, class counsel have been unable to find a case that provides anything close to these amounts for non-economic losses, with no proof requirement, in a data breach class action.

**C.** **All class members are treated equitably and fairly.**

In order for a settlement to receive preliminary approval, it must treat class members equitably in two respects.

First, the compensation formula or program for relief must treat each class member in a

fair fashion.  This does not require each class member to receive the *same* compensation, only

that the compensation is proportional under the circumstances of the case.  *See, e.g., Toolajian*,

U.S. Dist. LEXIS 250904, at *26 (approving a settlement that provided compensation based on

the number of weeks the class member worked and their highest rate of pay). Here, class

members have two potential avenues of relief.  First, class members who have had their identities

compromised and have suffered direct expenses or economic losses stemming from the breach are

able to recover the full value of their losses up to a maximum of $5,000.  In addition, all class

members who make a claim for non-economic losses will receive an equal, pro-rata share of the

remainder of the settlement fund.  This distribution formula recognizes that some individuals will

have suffered discrete compensable losses stemming from the Incident that should be reimbursed,

while at the same time everyone who had their information compromised suffered tangible (if

difficult to quantify) injuries that also merit compensation.  This settlement addresses, and

compensates, both scenarios.

Second, the proposed incentive award to the class representative should not be

disproportionate to the relief offered to other class members.  *Toolajian*, U.S. Dist. LEXIS

250904, at *26-28.  As this Court has noted, a $5,000 incentive award is "presumptively

reasonable."  *Id.* at *27 (citing *Lopez v. Bank of Am., N.A.,* No. 10-cv-01207-JST, 2015 U.S.

Dist. LEXIS 114105, at *23-24 (N.D. Cal. Aug. 27, 2015); *Harris*, 2012 U.S. Dist. LEXIS 13797,

at *20 (N.D. Cal. Feb. 6, 2012)).  Here, Plaintiff requests $5,000 for Mr. Grogan, as well as

$5,000 for the class representative in the companion case, Ms. Cruz.  While both individuals were

absolutely necessary in bringing the claims to the attention of class counsel and providing critical

information necessary to file these actions, Plaintiffs recognize that the case is at a fairly early

phase of action, and neither Mr. Grogan nor Ms. Cruz have been deposed or otherwise had to take

unusual efforts in support of the case.  For this reason, Plaintiff believes that the baseline award is

appropriate under the circumstances.  In addition, and perhaps more importantly, unlike in many

data breach settlements, a $5,000 award is not substantially higher than payments to other class

members; indeed, it is equal to the maximum award for economic losses.  *Cf. Lopez*, 2015 U.S.

Dist. LEXIS 114105, at *24-26 (reducing an incentive award where the proposed award was

1  "approximately forty-eight times greater than the average payout to individual class members").

2  Under these circumstances, the proposed awards are reasonable.

3        Finally, although the original complaint alleged a subclass of only California-based class

4  members, the settlement class includes no such subclass; all class members instead receive the

5  same relief.  The main rationale for this change is to allow all class members, regardless of

6  residency, who have suffered out-of-pocket losses to receive an award to compensate them for

7  their losses. For class members who have not suffered any out-of-pocket losses maintaining a

8  claim against Defendant will be exceedingly difficult because of their potential lack of statutory

9  standing and inability to satisfy the damages and causation element of common law claims. The

10 settlement, however, provides a monetary benefit, in addition to credit monitoring, for even these

11 class members.  A significant plurality of class members (over 41% of them, 3,315 of 7,992) are,

12 in fact, from California. *See* Second Decl. of Scott M. Fenwick, § 5. But even for these class

13 members the availability of statutory damages under the California Consumer Privacy Act, Cal.

14 Civ. Code § 1798.150, is by no means guaranteed. The Defendant has consistently asserted that

15 only California class members that can prove the causation elements of the statute—that their

16 information was acquired "as a result of" Defendant's "violation of a duty to implement and

17 maintain reasonable security procedures and practices" can recover under the CCPA. Prevailing

18 on the CCPA claim would require extensive and costly litigation into contested causation issues

19 that can only be determined at trial. Therefore, continuing to maintain a California subclass that

20 received "extra" relief, only for them, did not make good sense; moreover, giving the non-

21 California class members *less* relief for claims that were not guaranteed any greater outcome was

22 not equitable.

23        The settlement, therefore, provides a greater result for the entire class, and the California

24 members receive the same relief as the larger class because their claims are not greater or

25 stronger.  This is borne out by the overall high, and indeed unprecedented, level of relief obtained

26 on a per-class-member basis.

27        **D.**      **The settlement is within the range of reasonableness for final approval.**

28        Finally, the Court is to evaluate "whether the Settlement falls within the range of possible

approval" by looking at "substantive fairness and adequacy" via an analysis of the "expected recovery balanced against the value of the settlement offer." *Toolajian*, 2020 U.S. Dist. LEXIS 250904, at *28 (internal quotation marks and citations omitted). "It is well-settled law that a proposed settlement may be acceptable even though it amounts only to a fraction of the potential recovery that might be available to class members at trial." *Id*. (quoting *Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 171 (N.D. Cal. 2019) (internal quotation marks omitted)).

Here, class members will recover a substantial portion of their maximum theoretical damages. The Fourth Amended Complaint pleads seven recoverable claims, plus a declaratory judgment claim—negligence (Count I), negligence per se (Count II), breach of implied contract (Count III), unjust enrichment (Count IV), violation of the California Consumer Records Law (Count V), violation of the Unfair Competition Law (Count VI), and a violation of the California Consumer Privacy Act (Count VIII). With regard to the negligence, negligence per se, and breach of implied contract, a successful result at trial on any or all of these claims would allow each class member to recover that class member's actual damages stemming from the incident. *See Jimenez v. Superior Court* 29 Cal.4th 473, 483, 127 Cal. Rptr. 2d 614, 58 P.3d 450 (Cal. 2002) ("'appreciable, nonspeculative, present injury is an essential element of a tort cause of action.'"); CAL. CIV. CODE § 3300 ("For the breach of an obligation arising from contract, the measure of damages . . . is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby. . . ."). Likewise, a claim under the California Consumer Records Law allows for class members to "recover damages." *See* CAL. CIV. CODE § 1798.84(b).

A successful claim under the California Consumer Privacy Act provides between $100 and $750 per class member, or actual damages (whichever is greater), but only if a plaintiff can satisfy the causation elements of claim by demonstrating that his or her personal information was obtained "as a result of" a "violation of the duty to implement and maintain reasonable security procedures and practices." CAL. CIV. CODE § 1798.150(a)(1). The damages awarded within the range are at the discretion of the trial court, following a jury trial on the factual elements necessary to show liability, considering "the nature and seriousness of the misconduct, the number of violations, the persistence of the misconduct, the length of time over which the

misconduct occurred, the willfulness of the defendant's misconduct, and the defendant's assets, liabilities, and net worth." *Id.* § 1798.150(a)(2). As such, recovery under most of the common law theories, the California Consumer Records Law, and the CCPA could result in class members receiving their actual damages, or a court-determined amount between $100 and $750, whichever is greater as to the individual class member.[5]

Under the proposed settlement, class members will have two avenues of recovery. First, class members who have economic damages will receive a 100% recovery of those damages, up to a maximum of $5,000 per person. Thus, unless class members have greater than $5,000 in actual damages—which is potentially difficult given that Defendant has already provided credit monitoring services—any class members with actual damages will receive the full recovery that they would obtain upon success at trial. In addition, class members will be able to make a claim under the settlement regardless of whether they have actual damages or would satisfy the statutory standing requirements to state a claim. The total amount to be recovered under this avenue will be determined by the claims rate, but Plaintiffs estimate that each class member who makes a claim is likely to receive between $300 and $600, and perhaps much more. Critically, this is *in addition to*, as opposed to a substitute for, recovery for actual damages.

In summary, the settlement provides relief that is comparable, and likely far superior to, what a class member would receive if the case went all the way to trial and won—given that the Defendant asserts that the vast majority of the putative class has likely suffered no economic loss whatsoever—and then won all appeals, but without any of the risk, unpredictability, and delay.

Finally, Class Counsel's anticipated attorney fee and costs request is reasonable such that it will be granted at final approval. The Settlement creates a common fund of $1,400,000, and, beyond providing Settlement Class Members with the ability to recover for documented

---

[5] Plaintiffs also bring a claim under the Unfair Competition Law. While the UCL provides for broad equitable relief, "nonrestitutionary disgorgement of profits—that is, profits that are neither money a defendant took from the plaintiff nor funds in which the plaintiff has an ownership interest—is not an authorized remedy under the UCL. . . ." *Lee v. Luxottica Retail North America*, 65 Cal.App.5th 793, 800-01 (Cal.App. 2021) (citing *Korea Supply Co. v. Lockheed Martin Corp.* 29 Cal.4th 1134, 1140, 1144-48, 1152 (Cal. 2003)). Under the specific facts of this case, where class members were employees of McGrath and not customers of McGrath, Plaintiff believes that no class members would be able to recover monetarily under the UCL.

economic losses and non-economic losses, covers the cost of one year of credit monitoring. Pursuant to the Settlement Agreement, Class Counsel will apply for an award of up to $466,666.67 in attorney's fees, which is no more than one-third (33.33%) of the total settlement fund, plus their out-of-pocket expenses. *Id.* at § 9.1. Class Counsel spent 508 hours, or $302,610 in total lodestar, litigating, and subsequently resolving, this matter on behalf of Plaintiffs and the Class. The modest multiplier of approximately 1.5, which will continue to decrease between now and final approval, given the ongoing work Class Counsel will perform in furtherance of preliminary and final approval and claims administration. It is well-within the range of what is approved by courts in this district, especially in a case in which the result for class members is as strong as it is here. *See Koenig v. Lime Crime, Inc.*, No. CV 16-503 PSG (JEMx), 2018 U.S. Dist. LEXIS 245359, at *18-20 (C.D. Cal. Apr. 2, 2018) (38% of common fund awarded as attorneys' fees in data breach case); *Stuart v. Radioshack Corp.*, No. C-07-4499 EMC, 2010 WL 3155645, at *6 (N.D. Cal. Aug. 9, 2010) (noting that "the fee award represents one-third of the settlement amount," which is "well within the range of percentages which courts have upheld as reasonable in other class action lawsuits"); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming one-third of the common fund).

## II.     The Court should certify the settlement class.

Courts have long acknowledged the propriety of class certification for purposes of class action settlements. *See In re Wireless Facilities*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes"). "So when a settlement is presented to the court for approval prior to class certification, the court, as part of its analysis of the settlement, must consider whether Rule 23's certification requirements have been met." *Toolajian*, 2020 U.S. Dist. LEXIS 250904, at *13 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003)). Rule 23 analysis:

> is a two-step process. First, Rule 23(a) requires that (1) the proposed class be so numerous that joinder of all members is impracticable, (2) there be questions of law or fact common to the class, (3) the claims or defenses of the representative parties be typical of the claims or defenses of the class, and (4) the representative parties be in a position to fairly and adequately protect the interests of the class.

. . . Second, the proposed class must also satisfy at least one of the three requirements for certification in Rule 23(b). Here, Plaintiff relies on Rule 23(b)(3), which is satisfied when (1) the questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

*Id.* at \*14 (internal quotation marks omitted)).

### A.    The proposed class is sufficiently numerous.

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder would be impracticable. "Impracticability does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class.'" *Harris v. Palm Springs Alpine Estates, Inc*., 329 F.2d 909, 913-14 (9th Cir. 1964) (citation omitted).  "[W]here the number of class members exceeds forty, and particularly where class members number in excess of one hundred, the numerosity requirement will generally be found to be met." *In re Linkedin User Privacy Litig.,* 309 F.R.D. 573, 583 (N.D. Cal. 2015) (citation omitted). The number of individuals in the class is 8,502.  This is well over the threshold to establish numerosity.

### B.    The proposed class raises common issues, and the claims of the class representative are typical of the claims of members of the class.

"To fulfill the commonality requirement, plaintiffs must establish questions of law or fact common to the class as a whole."  *Hashemi*, 2022 U.S. Dist. LEXIS 119454, at \*6 (citing Rule 23(a)(2)).  "For the purposes of Rule 23(a)(2), even a single common question is sufficient."  *Id.* at \*7 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011); *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 957 (9th Cir. 2013)).

Here, the common question raised by the litigation is whether Defendant took proper and appropriate steps to protect the personal information of class members that resided in Defendant's systems.  Courts routinely find that data breach cases raise at least one common issue.  *See Hashemi,* 2022 U.S. Dist. LEXIS 119454, at \*7 (finding commonality where "Plaintiffs maintain that there are multiple common question of law or fact—i.e., whether Defendant breached its duty to safeguard the Class's PII, whether Defendant unreasonably delayed in notifying the Class about

the data breach, and whether Defendant's security measures or lack thereof violated various statutory provisions."); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.,* No. 16-MD-02752, 2020 U.S. Dist. LEXIS 129939, at *22 (N.D. Cal. July 20, 2020) (finding commonality in a data breach case, as "[i]n the case's current posture, whether Yahoo employed sufficient security measures to protect the Settlement Class Members' Personal Information from the Data Breaches lies at the heart of every claim."); *Sung v. Schurman Fine Papers*, No. 17-cv-02760, 2018 U.S. Dist. LEXIS 40379, at *9-10 (N.D. Cal. Mar. 11, 2018) (finding commonality in a data breach case where "[t]he lawsuit involves a single data breach…").

"Typicality requires a showing that the named plaintiffs are members of the class they represent and that their claims are 'reasonably co-extensive with those of absent class members,' but not necessarily 'substantially identical.'" *Hashemi,* 2022 U.S. Dist. LEXIS 119454, at *7 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id*. at *7-8 (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (internal citations omitted)).

As with commonality, typicality is routinely met in data breach cases, as both the class representative and the other members of the class were subject to the same event that gives rise the claims in the case, and thus subject to the same consequences of the allegedly improper data protection. *See In re Yahoo!*, 2020 U.S. Dist. LEXIS 129939, at *25 ("the Settlement Class Representatives, like the Settlement Class as a whole, were all Yahoo users who allegedly either suffered identity theft and/or were placed at substantial risk for identity theft. Accordingly, Yahoo's allegedly inadequate data security harmed the Settlement Class Representatives in a common way as the rest of the Settlement Class Members."); *Sung*, 2018 U.S. Dist. LEXIS 40379, at *10 (finding typicality where "[a]ll Settlement Employee Class Members allege that they provided PII to SRG as a condition of employment, and they may have provided PII for their spouses or other dependents.") Similarly here, the claims of Plaintiffs are the same as those of the other members of the class, as they stem from the same Incident and are the result of the same

alleged action (or lack of action) on the part of Defendant.

**C.      Both the class representatives and counsel are adequate.**

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). The Court must measure the adequacy of representation by two standards: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Wireless Facilities*, 253 F.R.D. at 611 (quoting *Staton*, 327 F.3d at 958); *see also Toolajian*, 2020 U.S. Dist. LEXIS 250904, at *16-17 (finding adequacy where (1) "Plaintiff has obtained qualified and experienced counsel"; (2) the class representative "has certified that he understands his responsibilities"; and (3) "there is no indication or reason to believe that Plaintiff or his counsel have any conflicts of interest with the absent class members.")

Plaintiff's counsel are experienced class action and data breach litigators, with a number similar cases and settlements under their belts. Joint Dec., ¶¶ 4, 6, 9. This experience allowed class counsel to properly evaluate the case, develop claims on behalf of class members, and conduct the litigation and settlement process effectively. Finally, class counsel have no conflicts that would prevent them from fully and zealously representing the interests of the class in this litigation. Likewise, Plaintiff Grogan and Plaintiff Cruz have no conflicts with any other member of the class, and understands his obligation to represent the interests of the class over and above his own interests. Ex. E, Declaration of Robert Grogan, at ¶ 5; Ex. F, Declaration of Helena Cruz, at ¶ 5. Both Plaintiff and Plaintiff's counsel are adequate.

**D.      Classwide issues predominate over individual questions.**

Plaintiff must demonstrate that common claims predominate over individual issues. "Common questions predominate over individual ones when they 'present a significant aspect of the case and . . . can be resolved for all members of the class in a single adjudication.'" *Toolajian*, 2020 U.S. Dist. LEXIS 250904, at *16-17 (quoting *Hanlon*, 150 F.3d at 1022).

The critical issues raised by this case is whether and to what degree Defendant failed to properly protect Plaintiff and class members' personal information, and to what degree did those

failures lead to an enhanced possibility of identity theft.  These issues can be resolved as to the class as a whole because them stem from Defendant's conduct.  The resolution of those issues thus predominate over any individual questions.  "Indeed, the focus on a defendant's security measures in a data breach class action 'is the precise type of predominant question that makes class-wide adjudication worthwhile.'" *In re Yahoo!,* 2020 U.S. Dist. LEXIS 129939, at *37-38 (quoting *In re Anthem.*, 327 F.R.D. at 312); *see also Sung*, 2018 U.S. Dist. LEXIS 40379, at *11 (finding predominance as "[a]ll claims arise from one data breach, and liability can be determined on a class-wide basis.").

**E.    Classwide resolution is superior to individual adjudication.**

Finally, the settlement meets the superiority requirement.  Superiority is found where "the aggregation of these claims can be expected to save time, effort and expense, and to promote uniformity without sacrificing procedural fairness, a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Toolajian*, 2020 U.S. Dist. LEXIS 250904, at *17 (internal quotation marks and citations omitted).  "Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, [the superiority] factor weighs in favor of class certification." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).

 In individual litigation, each class member would be able to seek damages of $100 to $750, plus actual damages stemming from the breach.  *See* CAL. CIV. CODE § 1798.150(a)(1). While this is not an insignificant amount, it is not sufficient to encourage a reasonable class member to retain their own attorney to pursue an individual claim.  Moreover, even if class members were to pursue their claims individually, the efficiency gain obtained from having a single resolution of all the common issues dwarfs the benefit of allowing 8,502 individuals to pursue their own cases.

**III.    The proposed notice plan is consistent with Rule 23 and due process.**

If the court determines that it will "likely be able to" approve the settlement, it must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. FED. R. CIV. P. 23(e)(1)(B). Class members are entitled to the "best notice that is

practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. FED. R. CIV. P. 23(c)(2)(B). "The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id.* To comply with due process, notice must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997). Notice must state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). FED. R. CIV. P. 23(c)(2)(B). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Toolajian*, U.S. Dist. LEXIS 250904, at *31 (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotation marks and citation omitted)).

The Settlement Agreement provides for a robust notice plan focused on direct where notice by U.S. mail will be sent to each Class Member, or where a mailing address is not available, email notice to the last known personal email address, if known. The proposed notice, attached as Exhibits A and B to the Settlement Agreement, contain all of the required disclosures set forth in Rule 23(c)(2)(B). *See also* Ex. A, at §§ 7.1, 7.6. Defendant will provide to the Settlement Administrator each class member's personal email address provided to Defendant. *Id.* at § 7.7. The notice will contain a claim form, allowing class members to submit claims under either the economic loss provision of the Settlement, the non-economic loss provision, or both. *Id.* at § 7.2.1. To back up the notice by U.S. mail or email, the Settlement Administrator will also establish a website where class members can obtain information about the case, as well as a portal to submit claims. Moreover, Class Members will have a reasonable 45 days from the date notice is issued to make claims, opt-out of the Settlement, or object. *Id.* at §§ 1.20, 1.21, 7.2.2.

Plaintiff submits that this plan of notice is well within the range of "best practicable notice

under the circumstances," as it provides easily accessible information directly to class members, and facilitates to the maximum extent possible the ability of class members to make claims and obtain relief.  As such, Plaintiff requests that the Court approve this plan of notice.

## CONCLUSION

For the foregoing reasons, the Court should: (1) preliminary approve the proposed settlement; (2) approve the proposed form of notice; and (3) schedule a fairness hearing to rule upon final approval of the proposed settlement.


Dated: January 20, 2023                    Respectfully submitted,

By:  */s/ Anthony I. Paronich*
Anthony I. Paronich, *Pro Hac Vice*
anthony@bparonichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400Hingham,
Massachusetts 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100

Matthew R. Wilson (Bar No. 290473)
Email: mwilson@meyerwilson.com
Michael J. Boyle, Jr. (Bar No. 258560)
Email: mboyle@meyerwilson.com
MEYER WILSON CO., LPA
305 W. Nationwide Blvd.
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

Samuel J. Strauss
*(Subject to Pro Hac Vice)*
Raina Borrelli a
*(Subject to Pro Hac Vice)*
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, WI 53703
Tel: 608-237-1775
sam@turkestrauss.com
raina@turkestrauss.com

*Attorneys for Plaintiffs and the Proposed Class*