Matthew R. Wilson (SBN 290473)
Michael J. Boyle, Jr. (SBN 258560)
MEYER WILSON CO., LPA
305 W. Nationwide Blvd
Columbus, OH  43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066
mwilson@meyerwilson.com
mboyle@meyerwilson.com

*Attorneys for Plaintiffs and the Proposed Class*

[Additional Counsel Listed on Signature Page]

# THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ROBERT GROGAN and HELENA CRUZ, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MCGRATH RENTCORP, <br><br> Defendant. | Case No. 3:22-cv-00490-AGT <br><br> **PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> Hearing Date: February 2, 2024 <br> Hearing Time: 10:00 a.m. <br> Hearing Location: Courtroom A, 15th Floor <br> 450 Golden Gate Ave. <br> San Francisco, CA <br> Judge: Judge Alex Tse |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 4, 2024, at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom A, 15th Floor of the United States District Court for the Northern District of California, Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, the Honorable Magistrate Judge Alex Tse, presiding, Plaintiffs Robert Grogan and Helena Cruz ( "Plaintiffs") hereby do and will move the Court an Order for final approval of the Settlement and certification of the Settlement Class pursuant to Rules 23(e) and 23(b)(3) of the Federal Rules of Civil Procedure ("Rule(s)").[1] Defendant does not oppose the relief sought in this motion.

In so moving, Plaintiffs respectfully request the Court: (1) approve the Settlement Agreement as fair, reasonable, and adequate under Rule 23(e); (2) finally certify the Settlement Class under Rule 23(b)(3); (3) finally appoint Plaintiffs as Class Representatives for the Settlement Class; (4) finally appoint as Settlement Class Counsel Meyer Wilson Co., LPA, Paronich Law, P.C., and Turke & Strauss LLP; and (5) find the Notice Program as implemented satisfies Rule 23 and due process.

This motion is based upon this Motion, the Memorandum of Points and Authorities, the accompanying Joint Declaration of Settlement Class Counsel ("Joint Decl."), the Declaration of Scott M. Fenwick and all exhibits attached thereto, pleadings on file in this Action, and other such matters and argument as the Court may consider at the hearing on this motion.

---

[1] Unless otherwise indicated, the defined terms herein shall have the same definition as set forth in the Settlement Agreement, ECF No. 40-2.

**<u>TABLE OF CONTENTS</u>**

I.    INTRODUCTION ...................................................................................................1

II.   RELEVANT BACKGROUND ..............................................................................1

III.  THE SETTLEMENT TERMS ...............................................................................2

    A.  The Settlement Class .................................................................................... 2

    B.  Settlement Benefits ...................................................................................... 3

        1.   Settlement Fund .................................................................................. 3

        2.   Settlement Benefits ............................................................................ 3

    C.  Class Notice and Settlement Administration ............................................... 3

    D.  Attorneys' Fees and Expenses and Service Award to Plaintiff .................... 4

    E.  Release ......................................................................................................... 5

V.    CLAIMS, REQUESTS FOR EXCLUSION AND OBJECTIONS .........................5

VI.   LEGAL ARGUMENT ...........................................................................................5

    A.  The Court Should Certify the Class for Settlement Purposes ...................... 5

        1.   The Rule 23(a) Requirements Are Met for Purposes of Settlement ...................... 6

        2.   The Requirements of Rule 23(b)(3) Are Met for Purposes of Settlement ............. 8

    B.  The Court Should Finally Approve the Settlement ....................................... 9

        1.   The Strength of Plaintiffs' Case ...................................................... 10

        2.   The Risk, Expense, Complexity, and Likely Duration of Further Litigation ...... 10

        3.   The Risk of Maintaining Class Action Status Through Trial ............................. 11

        4.   Amount Offered in Settlement ......................................................... 12

        5.   The Extent of Discovery Completed and the Stage of Proceedings ................... 13

        6.   The Experience and Views of Counsel ............................................ 14

        7.   The Reaction of the Class Members to the Proposed Settlement ...................... 14

        8.   Lack of Collusion among the Parties ............................................... 14

        9.   The Settlement Treats Settlement Class Members Equitably ........................... 15

VII.    CONCLUSION ............................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997)................................................................. 5, 8, 9

*Atkinson et al. v. Minted, Inc.*,
  No. 3:20-cv-03869 (N.D. Cal.) ............................................... 5

*Calderon v. Wolf Firm*,
  2018 WL 6843723 (C.D. Cal. Mar. 13, 2018)........................ 13

*Capaci v. Sports Rsch. Corp.*,
  2022 WL 1133818 (C.D. Cal. Apr. 14, 2022) ........................ 8

*Chester v. TJX Cos.*,
  2017 WL 6205788 (C.D. Cal. Dec. 5, 2017) .......................... 10

*Chua v. City of L.A.*,
  2017 WL 10776036 (C.D. Cal. May 25, 2017) ....................... 8

*Cochran, et al. v. Kroger Co.*,
  5:21-cv-01887 (N.D. Cal.)......................................................... 5

*Corona v. Sony Pictures Entertainment, Inc.*,
  No. 2:14-cv-9600 (C.D. Cal.) .................................................. 5

*Dennis v. Kellogg Co.*,
  2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) ........................ 10

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) .................................................. 6, 7

*Forcellati v. Hyland's, Inc.*,
  2014 U.S. Dist. LEXIS 50600 (C.D. Cal. Apr. 9, 2014) ......... 7

*Franklin v. Kaypro Corp.*,
  884 F.2d 1222 (9th Cir. 1989) ................................................. 10

*Fulton-Green v. Accolade, Inc.*,
  2019 U.S. Dist. LEXIS 164375 (E.D. Pa. Sep. 23, 2019) ....... 11

*Gaston v. Fabfitfun, Inc.*,
  2021 U.S. Dist. LEXIS 147383 (C.D. Cal. Apr. 2, 2021) ........ 13

*Grimm v. Am. Eagle Airlines, Inc.*,
  2014 WL 12746376 (C.D. Cal. Sep. 24, 2014) ...................... 12

*Hanlon v. Chrysler Corp*,
  150 F.3d, 1011 (9th Cir. 1998) ............................................... 7, 8

*Hashemi v. Bosley, Inc.*,
    No. CV-21-946, 2022 U.S. Dist. LEXIS 119454 (C.D. Cal. Feb. 22, 2022) ............. 6, 7, 11, 13

*Hillman v. Lexicon Consulting, Inc.*,
    2017 WL 10434013 (C.D. Cal. Oct. 12, 2017) ........................................................................ 14

*Hudson v. Libre Tech. Inc.*,
    WL 2467060 (S.D. Cal. May 12, 2020) ................................................................................... 15

*In re Anthem, Inc. Data Breach Litig.*,
    327 F.R.D. 299 (N.D. Cal. 2018) ........................................................................................ 9, 13

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) .................................................................................................. 10

*In re Brinker Data Incident Litig.*,
    2021 WL 1405508 (M.D. Fla., Apr. 14, 2021) ....................................................................... 12

*In re Corrugated Container Antitrust Litig.*,
    643 F.2d 195 (5th Cir. 1981) .................................................................................................. 12

*In re Experian Data Breach Litig.*,
    2019 U.S. Dist. LEXIS 81243 (C.D. Cal. May 10, 2019) ....................................................... 13

*In re Google LLC St. View Elec. Communs. Litig.*,
    2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) .......................................................................... 6

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) .................................................................................................... 6

*In re Linkedin User Privacy Litig.*,
    309 F.R.D. 573 (N.D. Cal. 2015) .............................................................................................. 6

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
    341 F.R.D. 128 (D. Md. 2022) ................................................................................................. 12

*In re MRV Communs., Inc. Derivative Litig.*,
    2013 WL 2897874 (C.D. Cal. June 6, 2013) ........................................................................... 12

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
    2019 WL 3410382 (D. Or. July 29, 2019) ........................................................................... 6, 13

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
    No. 1:17-md-2807, 2019 U.S. Dist. LEXIS 135573 (N.D. Ohio Aug. 12, 2019) ................... 11

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d  1078 (N.D. Cal. 2007) ................................................................................. 15

*In re TD Ameritrade Account Holder Litig.*,
    No. C 07-2852 SBA, 2011 U.S. Dist. LEXIS 103222 (N.D. Cal. Sep. 12, 2011)................... 11

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) ................................................................. 7

*Keegan v. Am. Honda Motor Co*,
    284 F.R.D. 504 (C.D. Cal. 2012) ............................................................ 8

*Longest v. Green Tree Servicing LLC*,
    308 F.R.D. 310 (C.D. Cal. 2015) ............................................................ 7

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .......................................................... 14

*Paz v. AG Adriano Goldschmeid, Inc.*,
    2016 WL 4427439 (S.D. Cal. Feb. 29, 2016) ....................................... 11

*Reynoso v. All Power Mfg. Co.*,
    2018 WL 5906645 (C.D. Cal. Apr. 30, 2018) ......................................... 8

*Smith v. Triad of Ala., LLC*,
    2017 WL 1044692 (M.D. Ala. Mar. 17, 2017) ..................................... 12

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ............................................................................ 8

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................ 6

*Zinser v. Accufix Rsch. Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ................................................................ 8

**Other Authorities**

MANUAL FOR COMPLEX LITIG. (4th ed. 2004) ................................................. 5

Newberg on Class Actions (4th ed. 2002) ..................................................... 14

**Rules**

Federal Rules of Civil Procedure, Rule 23 ............................................. passim

## I.    INTRODUCTION

Plaintiffs Robert Grogan and Helena Cruz, through their undersigned counsel, respectfully move this Court for entry of an order granting final approval to the settlement memorialized in the Settlement Agreement ("SA") (Doc. 40-2), that, subject to the Court's approval, will resolve this class action lawsuit. The Court preliminarily approved the settlement on September 1, 2023, Doc. 59 (the "Order"), following a hearing and a renewed motion for preliminary approval addressing certain issues raised by the Court. *See* Docs. 50, 51; *see also* Doc. 60-1, at ¶18 ("Joint Fees Decl."). Notice was issued to the preliminarily certified Settlement Class as directed by the Court in the Order and consistent with the Settlement Agreement. Doc. 59 at ¶¶7, 9 SA at §§7, 8.[2]

This settlement—which, as explained in Plaintiffs' preliminary approval papers and further herein, provides exceptional relief to the Settlement Class—is fair reasonable, and adequate and should be finally approved. The $1,400,000 common fund settlement on behalf of less than 8,000 Class Members[3] is an exceedingly good result, not only in comparison to similar data breach cases, but also given the benefits Class Members can claim that directly address the harm alleged by Plaintiffs, including up to $5,000 for Documented Economic Losses, a pro rata share of the Settlement Fund, and one year of free credit monitoring. The Settlement Class was provided with direct notice of the Settlement via postcard or email, with the Settlement Administrator estimating that over 96% of the class received the notice. The Claims Deadline and Objection and Opt-Out Deadline was November 6, 2023. SA, ¶¶ 1.4, 1.20, 1.21. Only one person requested exclusion from the settlement and no objections were filed. Thus, the reaction of the Settlement Class has been overwhelmingly positive.

The Settlement is fair, reasonable, and adequate, as the Court preliminarily found in its Order. This Court should now finally certify the Settlement Class for settlement purposes only, and finally approve the settlement as fair, reasonable, and adequate.

## II.    RELEVANT BACKGROUND

---

[2] Capitalized terms have the same definitions as in the Settlement Agreement.
[3] In prior filings, the class size was stated to be 8,502 members. As part of preparing class notice, Defendant identified a number of duplicate entries on the class list and determined there are 7,992 individual Settlement Class Members.

In January 2022, Plaintiff Grogan sued Defendant, alleging that it failed to protect his and a putative class's private information, leading to a data breach by cybercriminals. Doc. 1. Plaintiff Grogan filed a First Amended Complaint on March 1, 2022 (Doc. 14), and Defendant moved to dismiss Plaintiff's claims in their entirety shortly thereafter. Doc. 20. After research and analysis about Defendant's arguments, Plaintiff Grogan filed a Second Amended Complaint (with Defendant's consent) in response to the motion to dismiss. Doc. 28.  Plaintiff Cruz was added as a class representative in this case later.  Doc. 39.

Shortly thereafter, the Parties agreed to explore resolution, agreeing to mediate the case on a class-wide basis and stay all case deadlines pending a mediation. Joint Fees Dec., ¶7; Docs. 30, 31. The Parties agreed to mediate with Randall Wulff, a respected mediator, in-person on June 29, 2022. Joint Fees Dec., ¶11. Prior to mediation, Class Counsel requested, and Defendant provided, key information needed to negotiate the Settlement, including class size and composition, information about the breach and the breach notice Defendant provided, and information related to applicable insurance coverage. Id. ¶¶8-9. Armed with that information, the Parties engaged in a full day, arm's-length mediation on June 29, 2022, assisted by Mr. Wulff. Id. ¶11. As a result of the mediation, the parties reached agreement on the key terms of the Settlement and executed a term sheet. Id. ¶¶12-13. Over the subsequent weeks, Class Counsel drafted the Settlement Agreement and exhibits (including the notices and claim form), worked with counsel for McGrath to finalize those documents, prepared a motion for preliminary approval, and prepared and filed a Third Amended Complaint. Id. ¶14; Doc. 39.

Preliminary approval was granted on September 1, 2023, following a January 6, 2023, hearing and renewed motion for preliminary approval. Docs. 40 to 40-8, 46, 50, 51, 59. Following entry of the Order, the parties worked with the Settlement Administrator, Kroll, to finalize the notices and claim forms, set up the Settlement website, and ensure notice was issued consistent with the Order and the Settlement. Joint Fees Dec., ¶19.

## III.    THE SETTLEMENT TERMS

### A.  The Settlement Class

The Settlement provides relief for the following Settlement Class, which was preliminarily

certified by the Court: "All persons whose personal information, which may include health information, was potentially exposed to unauthorized access as a result of a[n] Incident affecting Defendant's computer network that occurred in 2021." Order, ¶4. Excluded from the Class are any individuals who validly opt out of the Settlement, which is one individual. *Id.*

**B.  Settlement Benefits**

**1.  Settlement Fund**

The Settlement provides for the creation of a non-reversionary cash settlement fund of $1,400,000 to fund the Settlement Agreement's benefits and expenses. SA, § 1.16. Specifically, the fund covers class members' verified claims, attorneys' fees and costs, incentive awards to the named plaintiffs, and settlement administration expenses.  No portion of this fund will revert to the Defendant. *Id.* §§ 4.5, 6.4, 9.1.

**2.  Settlement Benefits**

The Settlement provides that Class Members can make two types of claims.  First, they can make a claim for Documented Economic Loss, up to a maximum of $5,000.  *Id.* § 4.5.2.  Such losses can arise from any unreimbursed out-of-pocket costs that are fairly traceable to the Data Breach. *Id.* § 1.9.

Second, Settlement Class Members can make a claim for non-economic losses, and receive a pro-rata share of the remaining funds available in the Settlement Fund, after paying Documented Economic Loss claims, attorneys' fees and costs, incentive payments, and administrative expenses. *Id.* § 4.5.8.  A Settlement Class Member may make both types of claims.

Finally, every Class Member, even those who opt out of the class, can get one year of free credit monitoring.  *Id.* § 4.5.1. According to the Settlement Administrator, the value of one free year of credit monitoring is $119.88 a class member. Doc. 40-4, § 4.

**C.  Class Notice and Settlement Administration**

The parties agreed to the appointment of Kroll Settlement Administration LLC ("Kroll") as Claim Administrator, and Kroll has spent $53,026.34 and estimates that it will spend $41,146.95 more on this matter. *See* Declaration of Scott M. Fenwick of Kroll Settlement Administration LLC in Connection with Final Approval of Class Action Settlement ("Fenwick Decl."), ¶ 18.

Kroll sent the Short Notice by first class mail or email to the 7,460 individual Settlement Class members for whom McGrath had contact information. *Id.* ¶¶5, 9-10. Of the 7,408 Short Notices Kroll sent to the Settlement Class via US mail, 29 were returned by the USPS with a forwarding address of which 28 were automatically re-mailed to the updated addresses by the USPS with the remaining one re-mailed by Kroll. *Id.*, ¶12. 992 Short Notices were returned by the USPS as undeliverable as addressed without a forwarding address, but Kroll was able to identify updated addresses for 739 of those. *Id.* Unfortunately, three of those were returned as undeliverable a second time. *Id.* Of the 52 Short Notices sent exclusively via email, five were rejected as undeliverable and were not able to be delivered. *Id.* ¶10. As a result of the above, the Short Notice reached 7,204 of the 7,460 people to whom the Short Notice was sent, equating to a reach rate of 96.57%. *Id.* ¶13.

Kroll also created a dedicated Settlement Website, www.McGrathRentCorpSettlement.com, which went live on March 23, 2023 and contains a summary of the settlement, frequently asked questions, Settlement documents (including the Settlement Agreement, Preliminary Approval Order, Long-Form Notice, Reimbursement Claim form, Non-Economic Loss Claim form, and Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards), and allowed Settlement Class Members an opportunity to file claim form(s) online. *Id.* ¶8. Kroll also established a toll-free telephone number with Interactive Voice Response which, as of December 29, 2023, has received 159 calls and 73 of those callers have been connected to live operators. *Id.* ¶6.

### D. Attorneys' Fees and Expenses and Service Award to Plaintiff

Under the terms of the Settlement Agreement, Class Counsel was entitled to move the Court for an award of their reasonable attorneys' fees incurred in the Action in an amount not to exceed one-third (1/3) of the Settlement Fund, and reimbursement of costs and expenses. SA §10.1. Plaintiffs filed a motion requesting a reasonable fee of one-third of the $1,400,000 common fund (or $466,666.67), which amounts to a lodestar multiplier of 1.33. Doc. 60. Class Counsel also requested reimbursement of their costs of up to $27,051.20. *Id.* Finally, Plaintiffs requested that the Court grant their motion for service awards of $5,000 each in light of their commitment to pursuing this litigation on behalf of the Class. *Id.*

### E.  Release

Upon entry of the Final Approval Order, every Class Member who does not opt out of the settlement will be bound by the judgment and will release all claims and causes of action that were or could have been raised in the lawsuit, including, but not limited to, any causes of action under: CAL. CIV. CODE § 1798.150, CAL. BUS. & PROF. CODE § 17200 *et seq.*, and all similar statutes in effect in any states in the United States as defined here; negligence; negligence per se; breach of contract; breach of implied contract; breach of fiduciary duty; breach of confidence; invasion of privacy; misrepresentation (whether fraudulent, negligent or innocent); unjust enrichment; bailment; wantonness; failure to provide adequate notice under any breach notification statute or common law duty. SA §8.

## V.    CLAIMS, REQUESTS FOR EXCLUSION AND OBJECTIONS

The deadline to object or opt-out was November 6, 2023. Fenwick Decl., ¶16. As of the filing of this motion, no objections have been filed and only one person has requested exclusion. *Id.*, ¶¶16-17. The Claims Deadline was November 6, 2023. *Id.* ¶14. As of December 29, 2023, Kroll received 48 claims for reimbursement of Economic Losses and 387 claims for Non-Economic Loss. *Id.* ¶14. The Claims Administrator is still in the process of reviewing and validating Claim Forms. *Id.* ¶15. The 435 claims received so far results in a claims rate of 5.4%, which is at the high end of the range of claims rates in other data breach class action settlements within this Circuit. Fenwick Decl., ¶14; *see Corona v. Sony Pictures Entertainment, Inc.,* No. 2:14-cv-9600 (C.D. Cal.) ECF Nos. 145-1 at 11 n.8 & 164 at 2 (Claims rate of 0.7%); *Cochran, et al. v. Kroger Co.,* 5:21-cv-01887 (N.D. Cal.) ECF Nos. 108 at 4-6 & 108-1, ¶ 4 (Claims rate of 2.1%); *Atkinson et al. v. Minted, Inc.,* No. 3:20-cv-03869 (N.D. Cal.) ECF No. 71 at 4 (Claims rate of 3.5%).

## VI.    LEGAL ARGUMENT

### A.  The Court Should Certify the Class for Settlement Purposes

Before assessing the parties' settlement, the Court should first confirm the underlying Settlement Class meets the requirements of Rule 23. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); MANUAL FOR COMPLEX LITIG. § 21.632 (4th ed. 2004). The requirements are well known: numerosity, commonality, typicality, and adequacy—each of which is met here. Fed. R.

Civ. P. 23(a); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011). The Court found the Settlement Class met these requirements in its Order and provisionally certified the Settlement Class for settlement purposes. Doc. 59. Plaintiffs respectfully submit the Court's original assessment was correct and it should now certify the Settlement Class for settlement purposes.

### 1. The Rule 23(a) Requirements Are Met for Purposes of Settlement

The Settlement Class includes approximately 7,460 individuals, and therefore, it readily satisfies the numerosity requirement. *See* Fed. R. Civ. P. 23(a)(1). "[W]here the number of class members exceeds forty, and particularly where class members number in excess of one hundred, the numerosity requirement will generally be found to be met." *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 583 (N.D. Cal. 2015) (citation omitted).

The Class also satisfies the commonality requirement, which requires class members' claims "depend upon a common contention" of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, as in most data breach cases, courts in the Ninth Circuit have found that these common issues all center around Defendant's alleged misconduct, and in particular, satisfying the commonality requirement. *Hashemi v. Bosley, Inc.*, No. CV-21-946, 2022 U.S. Dist. LEXIS 119454, *7 (C.D. Cal. Feb. 22, 2022) (finding commonality where "Plaintiffs maintain that there are multiple common question of law or fact—i.e., whether Defendant breached its duty to safeguard the Class's PII, whether Defendant unreasonably delayed in notifying the Class about the data breach, and whether Defendant's security measures or lack thereof violated various statutory provisions."); *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 2019 WL 3410382, at *10 (D. Or. July 29, 2019). For the same reason, predominance is readily met "where the class is a 'cohesive group of individuals [who] suffered the same harm in the same way because of the [defendant's] conduct.'" *In re Google LLC St. View Elec. Communs. Litig.*, 2020 WL 1288377, at *5 (N.D. Cal. Mar. 18, 2020) (quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 559 (9th Cir. 2019)). Thus, common questions include, among many, whether Defendant engaged in the wrongful conduct alleged; whether Class Members' PII was

compromised during the Data Security Incident; whether Defendant owed a duty to Plaintiffs and Class Members and breached its duty; and whether Defendant unreasonably delayed notifying Plaintiffs and Class Members of the material facts of the Data Security Incident.

Typicality and adequacy are also easily met for purposes of settlement. "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hashemi,* 2022 U.S. Dist. LEXIS 119454, at *7-8 (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (internal citations omitted)). Plaintiffs' claims are typical of the proposed Class because they are based on Defendant's alleged failure to protect Plaintiffs' and Class Members' PII and are therefore "reasonably coextensive with those of the absent class members." *See* Fed. R. Civ. P. 23(a)(3); *Forcellati v. Hyland's, Inc.*, 2014 U.S. Dist. LEXIS 50600, at *31 (C.D. Cal. Apr. 9, 2014) (finding plaintiffs' claims were reasonably co-extensive with those of absent class members); *Sung*, 2018 U.S. Dist. LEXIS 40379, at *10 (finding typicality where "[a]ll Settlement Employee Class Members allege that they provided PII to SRG as a condition of employment, and they may have provided PII for their spouses or other dependents."). Plaintiffs allege that their PII was compromised, and that Defendant's same alleged poor data security practices caused them the same injury that the Class suffered. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("[I]t is sufficient for typicality if the plaintiff endured a course of conduct directed against the class.").

Plaintiffs are also adequate class representatives because (1) there are no antagonistic or conflicting interests between Plaintiffs and their counsel and the absent Class Members; and (2) Plaintiffs and their counsel will vigorously prosecute the action on behalf of the Class. Fed. R. Civ. P. 23(a)(4); *see also Ellis,* 657 F.3d at 985 (citing *Hanlon v. Chrysler Corp*, 150 F.3d, 1011, 1020 (9th Cir. 1998); *Longest v. Green Tree Servicing LLC,* 308 F.R.D. 310, 325 (C.D. Cal. 2015). Plaintiffs have no conflicts of interest with other class members, are not subject to unique defenses, and they and their counsel have and continue to vigorously prosecute this case on behalf of the Class. Plaintiffs are members of the Class who have experienced the same injuries and seek, like other Class Members, compensation. As such, Plaintiffs' and the Proposed Class Counsel's

1    interests align with those of the Class. Further, Class Counsel have decades of combined experience

2    as class action advocates and are well suited to litigate on behalf of the Class. *See* Joint Fee Dec.,

3    ¶¶46-53. Thus, Plaintiffs will adequately protect the interests of the Class.

4    **2.    The Requirements of Rule 23(b)(3) Are Met for Purposes of Settlement**

5         In addition to meeting the conditions imposed by Rule 23(a), parties seeking class

6    certification must also show that the action is maintainable under FRCP 23(b)(1), (2) or (3). *See*

7    *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Here, Plaintiffs allege that

8    the Settlement Class is maintainable for purposes of settlement under Rule 23(b)(3), as common

9    questions predominate over any individual questions and class resolution is superior to other

10   available methods for a fair and efficient resolution of the controversy. *Hanlon,* 150 F.3d at 1022.

11        Common questions of law and fact predominate over individualized questions. "The Rule

12   23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant

13   adjudication by representation." *Capaci v. Sports Rsch. Corp.*, 2022 WL 1133818, at *9 (C.D. Cal.

14   Apr. 14, 2022) (citing *Amchem Prods.*, 521 U.S. at 623). Courts analyze whether a prima facie

15   showing of liability can be proved by common evidence or whether this showing varies from

16   member to member. *Reynoso v. All Power Mfg. Co.*, 2018 WL 5906645, at *3 (C.D. Cal. Apr. 30,

17   2018) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)). If, to make a prima

18   facie showing on an issue, plaintiffs will need to present evidence that varies from one class member

19   to the next, then the issue raises an individual question. *Chua v. City of L.A.*, 2017 WL 10776036,

20   at *9 (C.D. Cal. May 25, 2017). If the same evidence can suffice for each member of the class on

21   an issue, then it becomes a common question. *Id.* (citing *Tyson Foods, Inc.*, 136 S. Ct. at 1045)

22   (internal quotations and citation omitted). Courts in the Ninth Circuit find predominance where

23   there is a sufficient constellation of common issues that binds class members together. *Keegan v.*

24   *Am. Honda Motor Co*, 284 F.R.D. 504, 545 (C.D. Cal. 2012).

25        Plaintiffs' claims depend, first and foremost, on whether Defendant used reasonable data

26   security measures to protect PII. That question can be resolved using the same evidence for all Class

27   Members, and thus is precisely the type of predominant question that makes a class-wide settlement

28   worthwhile. *See, e.g., Tyson Foods, Inc.* 136 S. Ct. at 1045 ("When 'one or more of the central

1   issues in the action are common to the class and can be said to predominate, the action may be

2   considered proper under Rule 23(b)(3) …'") (citation omitted).

3     Rule 23(b)(3) requires that a "class action [be] superior to other available methods for fairly

4   and efficiently adjudicating the controversy" and is intended to cover cases "in which a class action

5   would achieve economies of time, effort, and expense, and promote ... uniformity of decisions as

6   to persons similarly situated, without sacrificing procedural fairness or bringing about other

7   undesirable results." *Amchem*, 521 U.S. at 615. Four factors are pertinent to this inquiry: (a) the

8   class members' interests in individually controlling the prosecution or defense of separate actions;

9   (b) the extent and nature of any litigation concerning the controversy already begun by or against

10  class members; (c) the desirability or undesirability of concentrating the litigation of the claims in

11  the particular forum; and (d) the likely difficulties in managing a class action. *See* Fed. R. Civ. P.

12  23(b)(3). Here, class treatment of Plaintiffs' and the Class's claims is superior to individual actions

13  because a class action will be more efficient and conserve costs, time, and effort. The relatively

14  minor amount of damages traceable to each Class member on an individual basis would not justify

15  the pursuit of separate lawsuits across the country. Additionally, a class action is the superior

16  method of adjudicating consumer claims arising from the Data Security Incident—just as in other

17  data breach cases where class-wide settlements have been approved. *See, e.g., In re Anthem, Inc.*

18  *Data Breach Litig.*, 327 F.R.D. 299, 316-17 (N.D. Cal. 2018); *In re LinkedIn User Priv. Litig.*, 309

19  F.R.D. 573, 585 (N.D. Cal. 2015). Further, the Class consists of thousands of individuals who,

20  should they be required to bring individual cases, would submit identical factual evidence regarding

21  Defendant's liability and seek redress for the same types of injuries, yet risk having different

22  outcomes, even though their claims arise out of the same conduct and the same Data Security

23  Incident. All these considerations demonstrate the superiority of a class action here.

24    **B.  The Court Should Finally Approve the Settlement**

25    Rule 23(e) provides that a proposed class action may be "settled, voluntarily dismissed, or

26  compromised only with the court's approval." Fed. R. Civ. P. 23(e). For a proposed class action to

27  be approved, the Court must determine, after a hearing, that it is fair, adequate, and reasonable. The

28  Ninth Circuit has identified nine factors to consider in analyzing the fairness, reasonableness, and

adequacy of a class settlement: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the views of counsel; (7) the presence of a governmental participant (not applicable here); (8) the reaction of the class members to the proposed settlement and; (9) whether the settlement is a product of collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Each of these factors weighs in favor of approval here.

In applying these factors, the guiding principle for courts remains that settlements of class actions are preferable. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits"). Here, the relevant factors support the conclusion that the negotiated settlement is fundamentally fair, reasonable, and adequate, and should be finally approved.

### 1. The Strength of Plaintiffs' Case

Plaintiffs believe they have a strong case for liability. In particular, Plaintiffs believe ample evidence will establish that Defendant failed to maintain reasonable data security practices, which led directly to the loss of Plaintiffs' and the Class's personal information. Moreover, Plaintiffs believe that once they establish that Defendant's data security measures were inadequate, Defendant is likely to be found liable under at least some of the theories of liability pled in the Complaint. However, Plaintiffs' success is not guaranteed. The actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication. *See Dennis v. Kellogg Co.*, 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). "Here, as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty for all parties involved." *Chester v. TJX Cos.*, 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). Given the challenges and inherent risks Plaintiffs face with respect to the novel claims characteristic of data breach actions, including class certification, summary judgment, and trial, the substantial benefits of the settlement favor final approval of the Settlement.

### 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

While Plaintiffs believe their case is strong, substantial risk is inherent in all cases. This case involves a proposed class of 7,460 people and a complicated and technical factual background in a relatively novel area: data breach litigation. Although nearly all class actions involve a high level of risk, expense, and complexity, this is a particularly complex class action due to the challenges plaintiffs face in data breach class actions. *See, e.g., In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 U.S. Dist. LEXIS 135573, at *13 (N.D. Ohio Aug. 12, 2019) ("[D]ata breach litigation is complex and largely undeveloped."); *Fulton-Green v. Accolade, Inc.*, 2019 U.S. Dist. LEXIS 164375, at *21 (E.D. Pa. Sep. 23, 2019) ("This is a complex case in a risky field of litigation because data breach class actions are uncertain and class certification is rare."). Indeed, "many [data breach cases] have been dismissed at the pleading stage." *In re TD Ameritrade Account Holder Litig.*, No. C 07-2852 SBA, 2011 U.S. Dist. LEXIS 103222, at *36 (N.D. Cal. Sep. 12, 2011).

Moreover, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, data breach cases are among the riskiest and most uncertain of all class action litigation, making accepting a favorable settlement the more prudent course. The damages methodologies, while theoretically sound in Plaintiffs' view, remain untested in front of a jury. *See Hashemi*, 2022 U.S. Dist. LEXIS 119454, at *18-19 ("Moreover, these risks are compounded by the fact that data breach class actions are a relatively new type of litigation and that damages methodologies in data breach cases are largely untested and have yet to be presented to a jury").

Each risk, by itself, could impede the successful prosecution of these claims at trial and in an eventual appeal—which would result in zero recovery to the Class. Therefore, this factor favors approval. "Regardless of the risk, litigation is always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG Adriano Goldschmeid, Inc.*, 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016).

### 3.  The Risk of Maintaining Class Action Status Through Trial

If the Parties were to proceed to litigate their claims through trial, Plaintiffs would encounter risks in obtaining and maintaining certification of the Class. The Class has not yet been certified, and Defendant will certainly oppose certification. Thus, Plaintiffs "necessarily risk[s] losing class

action status." *Grimm v. Am. Eagle Airlines, Inc.*, 2014 WL 12746376, at \*10 (C.D. Cal. Sep. 24, 2014). Class certification in contested consumer data breach cases is not common—first occurring in *Smith v. Triad of Ala., LLC,* 2017 WL 1044692, at \*16 (M.D. Ala. Mar. 17, 2017), and most recently in *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128 (D. Md. 2022)[4] and *In re Brinker Data Incident Litig.*, 2021 WL 1405508 (M.D. Fla., Apr. 14, 2021) and *Green-Cooper v. Brinker, Int'l, Inc.*, 73 F.4th 883 (upholding in part the district court's class certification order).[5] Thus, the scarcity of direct precedent amplifies the risks of continuing the Litigation.

### 4.  Amount Offered in Settlement

A settlement should stand or fall on the adequacy of its terms. *In re MRV Communs., Inc. Derivative Litig.*, 2013 WL 2897874, at \*4 (C.D. Cal. June 6, 2013) (citing *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981)). The settlement here reflects an excellent result in light of the challenges that come with data breach litigation. Specifically, the settlement provides substantial monetary relief to Class Members who submit valid Claim Forms. *See* SA,§ 1.16, 4.5.2, 4.5.8. Specifically, Class Members can make two types of claims. First, they can make a claim for Documented Economic Losses, up to a maximum of $5,000. *Id.* at § 4.5.2. Second, Settlement Class Members can make a claim for non-economic losses, and receive a pro-rata share of the remaining funds available in the Settlement Fund, after paying Documented Economic Loss claims, attorneys' fees and costs, incentive payments, and administrative expenses. *Id.* at § 4.5.8. Settlement Class Members may make both types of claims. Further, Plaintiffs and Class Members will receive, among other non-monetary relief, credit monitoring and identity theft protection for a year, valued at $119.88 per class member. *Id.*, § 4.5.1; Doc. 40-4, § 4.

---

[4] *Marriott* was subsequently vacated and remanded in light of a defense based on a class action waiver clause unique to the facts of that case, the timeliness of asserting that defense, and its applicability. *In re Marriott Int'l, Inc.*, 78 F.4th 677, 685 (4th Cir. 2023). On November 29, 2023, the Hon. John Preston Bailey rejected Marriott's waiver, choice of law, and venue arguments and re-certified the classes that Judge Grimberg certified on May 3, 2022 with respect to both Marriott and Accenture. *In re Marriott Int'l Customer Data Sec. Breach Litig.,* No. 19-MD-2879, 2023 WL 8247865, at \*1 (D. Md. Nov. 29, 2023)

[5] The Eleventh Circuit affirmed, in part, this certification. *See Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 894 (11th Cir. 2023).

The relief provided by this settlement is outstanding. The total cash value of this nonreversionary common fund ($1,400,000) is equal to ***$164.67 per class member***. Not included in this amount is the value of the credit monitoring also offered, which is significant. Courts in this circuit have consistently approved data breach settlements providing class members $3 or less per person; *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 318 (N.D. Cal. 2018) ($1.45 per class member is "meaningful consideration"); *In re Experian Data Breach Litig.*, 2019 U.S. Dist. LEXIS 81243, *25 (C.D. Cal. May 10, 2019) (settlement provided "a $1.47 payout per person, which compares favorably to other approved data breach settlements"); *In re Premera Blue Cross Cust. Data Sec. Breach Litig.*, 2019 U.S. Dist. LEXIS 127093, *65–67 (D. Or. July 29, 2019) (fund worth $3.02 per class member provides "significant value"); *Gaston v. Fabfitfun, Inc.*, 2021 U.S. Dist. LEXIS 147383, *18–20 & n.1 (C.D. Cal. Apr. 2, 2021) ($1.42 per class member is "substantial" relief "on par with that in other data breach settlements"). The result Plaintiff achieved in this case is remarkable in comparison. *Cf. Hashemi v. Bosley, Inc.*, 2022 U.S. Dist. LEXIS 119454, *19 (C.D. Cal. Feb. 22, 2022) ("Plaintiffs' $15 to $275 per Class Member value estimates greatly exceed the settlement value per class member in comparable data breach cases."). Considering that this is an unsettled area of law fraught with the risk that the Class would not be certified and that Plaintiffs would not succeed at trial, the present settlement represents an excellent compromise of Plaintiffs' and the Settlement Class Members' claims.

Because the settlement here is similar if not superior to other settlements that courts, including those in this district, have approved, this factor reflects that the settlement is fair. *See Calderon v. Wolf Firm*, 2018 WL 6843723, at *8 (C.D. Cal. Mar. 13, 2018) (comparing class settlement with other settlements in similar cases).

### 5. The Extent of Discovery Completed and the Stage of Proceedings

Before entering into settlement discussions on behalf of class members, counsel should have "sufficient information to make an informed decision." *Linney*, 151 F.3d at 1239. Here, Plaintiffs gathered all of the information that was available regarding McGrath and the Data Breach— including reviewing publicly-available documents concerning announcements of the breach, interviewing breach victims, and researching potential legal claims. Fees Dec., ¶2.  The parties also

informally exchanged Fed. R. Civ. Pro. Rule 408 informal discovery in advance of mediation and extensive mediation briefing. Fees Dec., ¶8. Although the parties have not engaged in formal discovery, Settlement Class Counsel's experience in similar types of privacy and data protection practices provided substantive knowledge on the subject to enable Class Counsel to represent Plaintiffs' and Class Members' interests without spending time and resources on expensive fact and expert discovery. Fees Dec., ¶¶46-53 and Exs. A-C. "[T]he efficiency with which the Parties were able to reach an agreement need not prevent this Court from granting . . . approval." *Hillman v. Lexicon Consulting, Inc.*, 2017 WL 10434013, at *4 (C.D. Cal. Oct. 12, 2017). Accordingly, Plaintiffs made a fully informed decision about the strengths and weaknesses of this case.

### 6. The Experience and Views of Counsel

Settlement Class Counsel initiated this lawsuit after Defendant announced the Data Breach, which impacted 7,460 individuals. Settlement Class Counsel have substantial experience litigating complex class cases of various types, including data breach cases such as this one. *See* Fees Dec., ¶¶46-53 and Exs. A-C. Having worked on behalf of the Class since the Data Breach was first announced, evaluated the legal and factual disputes, and dedicated significant time and resources to this litigation, Settlement Class Counsel fully endorse the settlement. A great deal of weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. *See, e.g., Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Therefore, this factor supports approval.

### 7. The Reaction of the Class Members to the Proposed Settlement

The deadline to object or opt-out was November 6, 2023. In response to 7,460 direct notices, no objections have been filed and only one individual has requested exclusion. Fenwick Decl., ¶¶ 16-17. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529; 4 Newberg on Class Actions, § 11:48 (4th ed. 2002) ("Courts have taken the position that one indication of the fairness of a settlement is the lack of or small number of objections [citations omitted]").

### 8. Lack of Collusion among the Parties

The Parties negotiated a substantial, multifaceted settlement, as described above, with the assistance of an experienced third-party neutral mediator, Randall Wulff. The Parties did not negotiate attorneys' fees and the service award until after agreement on all substantive portions of the class resolution had been reached, and both the class portion of the resolution and the attorneys' fees and the service award were negotiated during numerous and periodic arm's-length negotiations. Fees Dec., ¶16. Furthermore, Settlement Class Counsel are well versed in handling data breach class actions such as this one and fully understand the values recovered in similar cases. *Id*, ¶¶46-53 and Exs. A-C. Thus, the Court can be assured that the negotiations were not collusive.

**9. The Settlement Treats Settlement Class Members Equitably**

Finally, under Rule 23(e)(2)(D), the court must confirm that the settlement treats all class members equitably. Courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018). In deciding whether this factor weighs in favor of approval, a Court must determine whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Hudson v. Libre Tech. Inc.*, WL 2467060, at *9 (S.D. Cal. May 12, 2020) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

Here, all Settlement Class Members benefit from the same relief, without preferential treatment. While Plaintiffs seek Court approval of a service award, as explained in detail in Plaintiffs' Motion for Attorneys' Fees, Costs , and Service Awards, the award of $5,000 per Plaintiff aligns with awards granted in similar cases, is presumptively reasonable, and does not call into question Plaintiffs' adequacy or the validity of the Settlement. Therefore, this factor also weighs in favor of approval.

**VII. <u>CONCLUSION</u>**

For these reasons, Plaintiffs respectfully request this Court finally approve the settlement.

Dated: January 12, 2024        By: */s/ Raina C. Borrelli*
                                   Raina C. Borrelli (*pro hac vice*)

TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, Wisconsin 53703-3515
Telephone: (608) 237-1775
Facsimile: (608) 509 4423
raina@turkestrauss.com

Matthew R. Wilson (SBN 290473)
Michael J. Boyle, Jr. (SBN 258560)
MEYER WILSON CO., LPA
305 W. Nationwide Blvd
Columbus, OH  43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066
mwilson@meyerwilson.com
mboyle@meyerwilson.com

Anthony I. Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100
anthony@paronichlaw.com

*Attorneys for Plaintiffs and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I, Raina C. Borrelli, hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 12th day of January, 2024.

By:  <u>*/s/ Raina C. Borrelli*</u>
Raina Borrelli (*pro hac vice*)
raina@turkestrauss.com
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, Wisconsin 53703-3515
Telephone: (608) 237-1775
Facsimile: (608) 509 4423